Patrick O'Brien MURPHY aka
O'Brien Murphy and Beverly
Murphy, Appellants

v.

WELLS FARGO BANK, N.A. and
HSBC Bank USA, Appellees.

No. 14–11–00560–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 12, 2013.

O'Brien Murphy, Beverly Murphy, Houston, TX, pro se.

Caren DeLuccio, Daniel John Pettit, Houston, TX, for Appellees.

Panel consists of Justices FROST, McCALLY, and MIRABAL.*

## OPINION

MARGARET GARNER MIRABAL, Senior Justice (Assigned).

Appellants, Patrick O'Brien Murphy a/k/a O'Brien Murphy and Beverly Murphy, appeal from the trial court's Final Judgment and Order Granting Defendants' Motion for Summary Judgment. We af-

* Senior Justice Margaret Garner Mirabal sit-

firm in part and reverse and remand in part.

### FACTUAL AND PROCEDURAL BACKGROUND

In 2005 appellants wanted to refinance their existing home mortgage and began seeking out potential lenders. This process was complicated by the fact that appellants had a personal bankruptcy on their credit history. Appellants eventually chose appellee, Wells Fargo Bank, N.A. ("Wells Fargo"), as their lender. Appellants allege that during the loan negotiations, Wells Fargo promised that if appellants made all of their payments on time for the first two years and improved their credit, Wells Fargo would consider refinancing the loan at a lower, fixed interest rate, and would either waive or substantially reduce the closing costs. Appellants have not disputed the conditional nature of Wells Fargo's alleged promise.

On January 5, 2006, appellants and Wells Fargo executed an agreement for the refinancing of appellants' existing mortgage (the "Loan Agreement"). In accordance with the Loan Agreement, Wells Fargo loaned appellants $252,000.00. Under the terms of the Loan Agreement, appellants' payments were due on or before the first day of each month, and a failure to pay by the due date was considered a default. In addition, under the Loan Agreement, appellants had the option to either place money in an escrow account which Wells Fargo would then use to pay real estate taxes, assessments, and hazard insurance on appellants' behalf, or they could elect to pay those costs directly. Appellants opted for the second choice and thereby waived the creation of an escrow account and were thus required to pay the taxes and insurance directly. The Loan Agreement also expressly provided that any prior agreements between appellants

ting by assignment.

and Wells Fargo were superseded by the Loan Agreement. Finally, appellants and Wells Fargo agreed that the "Loan Agreements may not be varied by any oral agreements or discussions that occur before, contemporaneously with, or subsequent to the execution of the Loan Agreements."

Less than a year after executing the Loan Agreement, appellants defaulted. Appellant Patrick Murphy admitted during his deposition that appellants purposefully withheld their monthly payments as part of their effort to "get Wells Fargo's attention" and to "force negotiations" on the refinancing of appellants' loan. The summary judgment evidence established that appellants failed to perform two obligations under the Loan Agreement: (1) to make payments by the first day of each month;[1] and (2) to directly pay their property taxes for the years 2007, 2008, and 2009. As a result of appellants' failure to directly pay the property taxes assessed on appellants' property, Wells Fargo was forced to pay the taxes in order to protect their interest in appellants' property. After appellants failed to pay the real estate taxes on the property, Wells Fargo established an escrow account to pay the delinquent property taxes as well as to fund the payment of future tax assessments.

Wells Fargo sent appellants a notice of default on April 6, 2008. In that notice, Wells Fargo informed appellants that their loan was in default and the amount of the delinquency was $14,371.33. The notice went on to inform appellants that "[y]our failure to pay this delinquency, plus additional payments and fees that may become due, will result in the acceleration of your Mortgage Note. Once acceleration has occurred, a foreclosure action, or any other remedy permitted under the terms of your Mortgage or Deed of Trust, may be initiated."

On May 29, 2008, Wells Fargo assigned appellants' note and deed of trust to HSBC Bank USA ("HSBC") as trustee for Wells Fargo Asset Securities Corporation Home Equity Asset–Backed Certificates, series 2006–1. Wells Fargo was then retained by HSBC as the mortgage servicer on appellants' loan. Faced with appellants' failure to timely make their payments, complete cessation of payments starting in March 2008, and complete failure to pay the property taxes due on the property, Wells Fargo initiated foreclosure proceedings on July 14, 2008.

On November 14, 2008 appellants filed suit against Wells Fargo and HSBC.[2] In their original petition appellants asserted a cause of action for breach of an alleged oral contract to refinance appellants' mortgage. Appellants sought specific performance "that Wells Fargo agree to new terms in line with its prior representations." In addition, appellants asserted an action under the Uniform Declaratory Judgments Act seeking a declaration "that Wells Fargo or its successors are not entitled to foreclose the debt." See Tex. Civ. Prac. & Rem.Code Ann. § 37.001 et seq. (West 2008). Appellants also asserted in the alternative, a cause of action for common law fraud. Appellants also sought the recovery of their attorney's fees. Eventually, in their first amended petition, appel-

---

1. Appellants' payments were late for the following months: November 2006, December 2006, February 2007, March 2007, April 2007, May 2007, June 2007, July 2007, August 2007, September 2007, October 2007, November 2007, December 2007, January 2008 and February 2008. Appellants have not made a monthly payment on their loan since the February 2008 payment.

2. Once appellants filed their lawsuit, the foreclosure action was stayed and ultimately dismissed. See Tex.R. Civ. P. 736.11.

lants added a claim for violation of the Texas Deceptive Trade Practices–Consumer Protection Act ("DTPA"). *See* Tex. Bus. & Com.Code Ann. § 17.50 (West 2011). According to appellants, Wells Fargo violated the DTPA "by engaging in unconscionable conduct and by representing that the written agreements signed by [appellants] conferred rights and obligations that they did not have, to their detriment."

Wells Fargo answered appellants' suit and filed a counterclaim also seeking a declaratory judgment. According to Wells Fargo, a controversy existed between the parties because appellants asserted they were no longer obligated to make payments required by the Loan Agreement because Wells Fargo allegedly represented that it would renegotiate the terms of the Loan Agreement two years after the parties entered into that agreement. Wells Fargo asserted there was no provision in the Loan Agreement that would allow appellants to stop making payments for that reason. As a result of this controversy, Wells Fargo sought a declaration that appellants (1) had an obligation to continue making payments under the Loan Agreement after January 5, 2008; (2) failed to make payments after February of 2008; and (3) appellants' failure to make the required payments constituted a default on the Loan Agreement. Wells Fargo also sought the recovery of its attorney's fees.

Eventually, Wells Fargo and HSBC jointly filed a hybrid motion for summary judgment. In that motion, appellees both asserted they were entitled to judgment as a matter of law on each of appellants' claims and Wells Fargo argued it was entitled to judgment as a matter of law on its own declaratory judgment action. The trial court agreed and it granted appellees' motion on both its traditional and no-evidence grounds; the relief granted included the award to Wells Fargo of attorney's fees and costs in the amount of $116,505.75 against appellants personally.

Appellants filed a "Motion for Rehearing on Motion for Summary Judgment, Motion to Set Aside and Reopening of Discovery, or Alternatively Motion for a New Trial." In that motion, appellants repeated their arguments previously made in their summary judgment response and attempted to raise new grounds for the denial of appellees' motion. The trial court denied appellants' motion and this appeal followed.

## DISCUSSION

Appellants raise nine issues on appeal, which we consolidate into four.[3] In their first issue appellants argue the trial court erred in entering a judgment against them for Wells Fargo's attorney's fees. In their second issue appellants contend the trial court erred in granting Wells Fargo's motion for summary judgment on appellants' fraud and DTPA causes of action because there were genuine issues of material fact. In their third issue appellants assert the trial court abused its discretion when it denied their motion to set aside their deemed admissions. Finally, in their fourth issue, appellants argue the trial court also abused its discretion when it denied their motion for new trial. We turn first to appellants' issues directly arising out of the trial court's granting of

---

**3.** In their nine issues on appeal appellants have not challenged the summary judgment in favor of HSBC. Accordingly, we affirm that part of the trial court's summary judgment without further comment. *Walker v. Presidium, Inc.,* 296 S.W.3d 687, 692 (Tex.App.-El Paso 2009, no pet.). In addition, appellants have not challenged the trial court's granting of summary judgment in favor of Wells Fargo on their breach of contract cause of action so we need not address that cause of action in this appeal. *Id.*

Wells Fargo's motion for summary judgment.

## I. The Standard of Review

This case involves a summary judgment motion asserting both no-evidence and traditional grounds. In a traditional motion for summary judgment, the movant has the burden to show there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). If there is no genuine issue of material fact, summary judgment should issue as a matter of law. *Haase v. Glazner*, 62 S.W.3d 795, 797 (Tex.2001).

▆▆▆ When a plaintiff moves for summary judgment, it must prove all elements of its cause of action as a matter of law. Tex.R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986). A defendant who conclusively negates at least one of the essential elements of a plaintiff's cause of action is entitled to a summary judgment on that claim. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex.1999). Once a defendant establishes its right to summary judgment, the burden then shifts to the plaintiff to come forward with competent controverting summary judgment evidence raising a genuine issue of material fact. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995).

▆▆▆ In a no-evidence motion for summary judgment, the movant must specifically state the elements as to which there is no evidence. *Walker v. Thomasson Lumber Co.*, 203 S.W.3d 470, 473–74 (Tex. App.-Houston [14th Dist.] 2006, no pet.). The trial court must grant the motion unless the non-movant produces summary judgment evidence raising a genuine issue of material fact on each of the challenged elements. Tex.R. Civ. P. 166a(i). However, the non-movant is not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex.2008).

▆▆▆ A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Mathis v. Restoration Builders, Inc.*, 231 S.W.3d 47, 50 (Tex. App.-Houston [14th Dist.] 2007, no pet.). We sustain a no-evidence summary judgment if (1) there is a complete absence of proof of a vital fact; (2) the rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *Walker*, 203 S.W.3d at 474. Less than a scintilla of evidence exists when the evidence offered to prove a vital fact is so weak it does no more than create the mere surmise or suspicion of its existence and, in legal effect, is no evidence. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex.2004). More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions as to the existence of the vital fact. *Id.*

▆▆▆ We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005). We take all evidence favorable to the non-movant as true and indulge every reasonable inference and resolve any doubts in favor of the non-movant. *Id.*

Issues not expressly presented to the trial court by written motion, answer, or other response shall not be considered on appeal as grounds for reversal. Tex.R. Civ. P. 166a(c).

## II. Attorney's Fees

 In their first issue, appellants contend the trial court erred when it assessed Wells Fargo's attorney's fees against them personally. According to appellants, since the loan at issue here was a nonrecourse loan under which they were not personally liable, the trial court could not assess Wells Fargo's attorney's fees against them as part of the final judgment. We agree.

The loan documents underlying this lawsuit spell out the nonrecourse nature of the loan. Section 9 of the Note provides:

I understand that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that this Note is given without personal liability against such owner of the property described above and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud. This means that, absent actual fraud, the Note Holder can enforce its rights under this Note solely against the property described above and not personally against any owner of such property or the spouse of such owner.

Similarly, paragraph 24 of the Security Instrument provides:

Borrower understands that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that the Note is given without personal liability against each owner of the property and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud. That means that, absent such actual fraud, Lender can enforce its rights under this Security Instrument solely against the property and not personally against the owner of the Property or the spouse of an owner.[4]

In addition, paragraph 9 of the Security Instrument provides:

If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect the Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument,.... Lender's actions can include, but are not limited to ... (b) appearing in court; and (c) paying reasonable attorney's fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.... No powers are granted by Borrower to Lender or Trustee that would violate provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6)(C), Article XVI of the Texas Constitution or other Applicable Law.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice

---

4. Wells Fargo has not made any fraud allegations against appellants in this lawsuit.

from Lender to Borrower requesting payment.

 A nonrecourse note has the effect of making a note payable out of a particular fund or source, namely, the proceeds of the sale of the collateral securing the note. *Fein v. R.P.H., Inc.*, 68 S.W.3d 260, 266 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). "[U]nder a nonrecourse note, the maker does not personally guarantee repayment of the note and will, thus, have no personal liability." *Id.* If a maker of a nonrecourse note elects to not repay the note, he is not exposed to personal liability, but instead, takes the risk that the collateral securing the note will be lost if the holder decides to enforce its security interest in the collateral. *Id.*

In the present case, Wells Fargo had initiated foreclosure proceedings against appellants' homestead, and appellants filed suit seeking, in part, to enjoin the foreclosure. While pleaded as a request for a declaratory judgment that Wells Fargo was not entitled to foreclose on the lien, this was a prayer for injunctive relief due to Wells Fargo's alleged breach of contract and fraud. In its motion for summary judgment, Wells Fargo specifically acknowledges that:

> Plaintiffs brought this suit for the sole reason of halting a pending foreclosure action brought by Wells Fargo.... Wells Fargo filed its foreclosure action on July 14, 2008.... In order to prevent Wells Fargo from foreclosing on the

property, Plaintiffs filed suit against the Defendants alleging breach of contract and fraud on December 10, 2008.

Wells Fargo filed a counterclaim seeking a declaratory judgment that (a) appellants had a duty to fulfill their obligations under the loan; (b) appellants failed to fulfill these obligations; and (c) appellants' failure to do so constituted a default on the loan. While pleaded as a request for a declaratory judgment, this was a breach of contract claim.

 Appellants' and Wells Fargo's requests for declaratory relief cannot change the basic character of the litigation.[5] *See State v. Morales*, 869 S.W.2d 941, 947 (Tex. 1994) ("A litigant's request for declaratory relief cannot confer jurisdiction on the court, nor can it change the basic character of a suit."); *Ragira v. VIP Lodging Grp.*, 301 S.W.3d 747, 757–58 (Tex.App.-El Paso 2009, pet. denied) ("because the declaratory action cannot supplant the action to quiet title, VIP was unable to recover attorneys' fees."); *Doss v. Homecoming Fin. Network, Inc.*, 210 S.W.3d 706, 712 (Tex.App.-Corpus Christi 2006, pet. denied) ("A litigant's request for declaratory relief cannot confer jurisdiction on the court, nor can it change the basic character of a suit."). A party may not couple a declaratory plea with a damage action just to recover attorney's fees. *Cytogenix, Inc. v. Waldroff*, 213 S.W.3d 479, 490 (Tex. App.-Houston [1st Dist.] 2006, pet. denied).

5. Moreover, litigation of this character was specifically addressed by the agreements. Paragraph 9 of the Security Instrument contemplates the borrower failing to perform under the security agreement (9a) and the lender doing (appearing in court) and paying (i.e. attorney's fees) what is reasonable to protect its interests—such as oppose appellants. The last paragraph of that provision states that the Lender recovers those sums as "additional debt of Borrower secured by this Security Instrument" which "bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment." Therefore, although the parties contemplated legal proceedings necessary for Lender to protect its rights and contemplated the methodology for reimbursement of any costs incurred, **including fees,** our dissenting colleague would redraft these agreements to penalize the borrowers for instituting a proceeding to challenge the Lender's rights with a forfeiture of their non-recourse protection.

Thus, a trial court abuses its discretion in awarding attorney's fees under the Declaratory Judgment Act if the claim for declaratory relief is brought solely for the purpose of obtaining attorney's fees. *Id.*; *see also Kenneth Leventhal & Co. v. Reeves,* 978 S.W.2d 253, 258–59 (Tex.App.-Houston [14th Dist.] 1998, no pet.).

We note that Wells Fargo, in its motion for summary judgment, asserted as its sole ground for entitlement to attorney's fees, that it was "entitled to recover $116,505.75 in reasonable and necessary attorney's fees and court costs pursuant to section 37.009 of the Texas Civil Practice & Remedies Code **because Wells Fargo seeks declaratory relief.**" (Emphasis added). Further, in its brief on appeal, Wells Fargo states that "the attorney's fees Wells Fargo sought and were awarded relate solely to its properly filed declaratory judgment action." Wells Fargo clearly relied on its own attempted declaratory judgment action, not its defense of the appellants' attempted declaratory judgment action, to support its claim for attorney's fees. However, under the case law cited above, neither party's prayer for declaratory relief supports the award of attorney's fees in this case.

The nonrecourse status of the loan, established by the Texas Constitution and the plain meaning of the loan documents, mandates that appellants are not personally liable for the attorney's fees Wells Fargo incurred prosecuting this litigation; rather, Wells Fargo may only recover its attorney's fees and costs against the property. *See In re Mullin,* 433 B.R. 1, 17 (Bankr.S.D.Tex.2010) ("The plain meaning of the First Lien Note indicates that Wells Fargo may only recover its attorneys' fees and costs against the Property. Therefore, the Morgans are not personally liable to Wells Fargo for default under the First Lien Note because this note is considered

a non-recourse equity instrument under the Texas Constitution."). We sustain appellants' first issue.

## III. Summary Judgment on Appellants' DTPA and Fraud Claims

In their second issue appellants assert the trial court erred when it granted Wells Fargo's motion for summary judgment on their DTPA and fraud causes of action. We disagree.

### A. DTPA

Wells Fargo moved for summary judgment asserting it was entitled to judgment as a matter of law on appellants' DTPA cause of action because appellants were not consumers under the DTPA because they did not seek or acquire goods or services from Wells Fargo.

To recover under the DTPA, a claimant must establish that: (1) he was a consumer of the defendant's goods and services; (2) the defendant committed false, misleading, or deceptive acts in connection with the lease or sale of goods or services; and (3) such acts were a producing cause of actual damages to the consumer. *Burroughs v. APS Int'l, Ltd.,* 93 S.W.3d 155, 163 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). Appellants' DTPA claim founders on the first element: consumer status.

Whether a plaintiff is a consumer under the DTPA is a question of law for the court to decide. *Rivera v. South Green Ltd. P'ship,* 208 S.W.3d 12, 21 (Tex.App.-Houston [14th Dist.] 2006, pet. denied). A consumer is an individual who seeks or acquires goods or services by purchase or lease. *Id.* (citing *Amstadt v. U.S. Brass Corp.,* 919 S.W.2d 644, 649 (Tex.1996)). In *Riverside National Bank v. Lewis,* the Texas Supreme Court held that money is not a good or service under the DTPA and that one who seeks only

money in a transaction is not a consumer under the DTPA. 603 S.W.2d 169, 173–75 (Tex.1980). The court also held that Lewis was not a consumer because he sought only money to refinance his automobile loan to avoid repossession. *Id.* at 173–74. Because appellants were seeking a loan to refinance their home mortgage and not the purchase of a new home, we conclude that, like Lewis, they are not consumers under the DTPA. *Id.*; *Cent. Tex. Hardware, Inc. v. First City, Tex.–Bryan, N.A.,* 810 S.W.2d 234, 236–37 (Tex.App.-Houston [14th Dist.] 1991, writ denied). We hold the trial court did not err when it granted Wells Fargo's motion for summary judgment on appellants' DTPA cause of action.

### B. Fraud

■ In addition to their DTPA claim, appellants also asserted a common-law fraud cause of action against Wells Fargo based on appellants' allegation that Wells Fargo promised that if appellants made all of their payments on time for the first two years and improved their credit, Wells Fargo would consider refinancing the loan at a lower, fixed interest rate, and would either waive or substantially reduce the closing costs. Appellants contend the trial court erred in granting Wells Fargo's motion for summary judgment on their fraud claim.

In its summary judgment motion, Wells Fargo asserted it was entitled to summary judgment on appellants' fraud cause of action because the alleged misrepresentation was a conditional promise and was therefore too indefinite and uncertain to be actionable fraud.

■ A fraud cause of action requires a party to establish that (1) a material misrepresentation was made; (2) the representation was false; (3) when the speaker made the representation he knew it was false or made it recklessly without

knowledge of the truth and as a positive assertion; (4) the speaker made it with the intention that it should be acted upon by the party; (5) the party acted in reliance upon it; and (6) the party thereby suffered injury. *Lundy v. Masson,* 260 S.W.3d 482, 492 (Tex.App.-Houston [14th Dist.] 2008, pet. denied). A promise to act in the future constitutes fraud only when made with the intention, design, and purpose of deceiving, that is, a promise made with no intention of performing the act. *IKON Office Solutions, Inc. v. Eifert,* 125 S.W.3d 113, 124 (Tex.App.-Houston [14th Dist.] 2003, pet. denied).

Here, it is undisputed that the alleged misrepresentation underlying appellants' fraud cause of action was a conditional promise: if appellants made all of their payments on time for the first two years and improved their credit, Wells Fargo would consider refinancing the loan at a lower, fixed interest rate, and would either waive or substantially reduce the closing costs on that refinance. A conditional promise such as the one here is too indefinite and uncertain to support a fraud cause of action. *See Ford v. City State Bank of Palacios,* 44 S.W.3d 121, 139–41 (Tex.App.-Corpus Christi 2001, no pet.) (holding that a conditional promise to extend credit only if the borrower obtained approval from a third party cannot support a fraud claim if that condition is never met). We hold the trial court did not err when it granted Wells Fargo's motion for summary judgment on appellants' fraud cause of action.

### IV. Appellants' Deemed Admissions

■ In their third issue on appeal appellants contend the trial court abused its discretion when it denied their request, initially made in their response to appellees' motion for summary judgment, to withdraw their deemed admissions. Assuming without deciding the trial court

abused its discretion when it refused to withdraw the deemed admissions, because we have affirmed the trial court's granting of appellees' motion for summary judgment without considering the deemed admissions, we hold the error was harmless. We overrule appellants' third issue.

## V. Denial of Appellants' Motion for New Trial

### A. Standard of Review

■ We review a trial court's denial of a motion for new trial for an abuse of discretion. *Dir., State Empls. Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex.1994); *Stevens v. Anatolian Shepherd Dog Club of Am., Inc.*, 231 S.W.3d 71, 77 (Tex.App.-Houston [14th Dist.] 2007, pet. denied). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law, or if it clearly fails to correctly analyze or apply the law. *Stevens*, 231 S.W.3d at 77. The fact that a trial court may decide a matter within its discretionary authority differently than an appellate court does not demonstrate an abuse of discretion. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985).

### B. Analysis

■ Appellants contend the trial court abused its discretion when it denied their motion for new trial because they argue they needed additional time to conduct discovery, specifically the deposition of a Wells Fargo corporate representative. Wells Fargo responds that appellants have waived this issue. We agree.

When a party argues it has not had an adequate opportunity for discovery before a summary-judgment hearing, that party must file an affidavit explaining the need for further discovery or a verified motion for continuance.

*Doe v. Roman Catholic Archdiocese of Galveston–Houston*, 362 S.W.3d 803, 809 (Tex.App.-Houston [14th Dist.] 2012, no pet.). The affidavit must explain why the continuance is necessary by detailing the evidence sought, explaining its materiality, and showing the due diligence that was used to obtain that evidence. *Carter v. MacFadyen*, 93 S.W.3d 307, 310 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). Appellants did not do this; therefore they have waived this particular complaint on appeal. *Rogers v. Cont'l Airlines, Inc.*, 41 S.W.3d 196, 200–01 (Tex.App.-Houston [14th Dist.], no pet.).

■ Appellants also argue at length that the trial court should have granted their motion for new trial because they "submitted additional references to other court's decisions and various publications elaborating on the possibility of forged or manufactured documents by what is known as 'robo-signing.'" However, none of these "additional references" were presented to the trial court in their summary judgment response. Because they were not, we cannot conclude that the trial court abused its discretion when it denied their motion for new trial. *See Dubose v. Worker's Med., P.A.*, 117 S.W.3d 916, 920 (Tex. App.-Houston [14th Dist.] 2003, no pet.) (holding, in a summary judgment case, that any issues not expressly presented to the trial court in a written response shall not be considered as grounds for reversal). We overrule appellants' fourth issue on appeal.

## CONCLUSION

We affirm the trial court's summary judgment in favor of appellees on appellants' causes of action against them. We affirm that part of the trial court's summary judgment granting Wells Fargo's request for a declaration that appellants are in default of the Loan Agreement. We

reverse the trial court's summary judgment to the extent it awards Wells Fargo attorney's fees against appellants personally, and remand that issue to the trial court for further proceedings consistent with this opinion.

FROST, J., dissenting.

KEM THOMPSON FROST, Justice, dissenting.

Today the court must decide whether article XVI, section 50(a)(6) of the Texas Constitution prohibits a trial court from awarding attorney's fees to a lender under the Texas Declaratory Judgments Act when the lender obtains declaratory relief regarding a nonrecourse home-equity loan and successfully defends the borrowers' claim for declaratory relief regarding this loan. The majority concludes that it does. I respectfully disagree.

In this case, the lender successfully defended against the borrowers' claim for declaratory relief and, in addition, the lender obtained declaratory relief that it sought in its counterclaim. Therefore, section 37.009 of the Texas Civil Practice and Remedies Code, which governs the award of attorney's fees in declaratory-judgment actions, provides a proper statutory basis for the trial court's award of attorney's fees in the lender's favor. The promissory note and security instrument executed by the borrowers provide that, absent actual fraud, the borrowers cannot be personally liable under the note or under the security instrument. Under the unambiguous language of these instruments, the parties intended the debt in question to be an extension of credit under article XVI, section 50(a)(6) of the Texas Constitution. But neither of these facts prevents the lender from recovering attorney's fees under the Texas Declaratory Judgments Act. This court should affirm the trial court's award of attorney's fees to the lender.

**Texas Civil Practice and Remedies Code section 37.009 provides a proper statutory basis for the trial court's award of attorney's fees in the lender's favor.**

In the January 2006 transaction at issue in this case, appellee Wells Fargo Bank, N.A. (the "Bank") extended credit to appellants Patrick O'Brien Murphy a/k/a O'Brien Murphy and Beverly Murphy. The Murphys executed a "Texas Home Equity Adjustable Rate Note," a "Texas Home Equity Security Instrument," and a "Loan Agreement Notice" (collectively, the "Loan Documents"). The Murphys filed suit against the Bank, alleging the following:

- The Murphys were served in a different suit with an application under Texas Rule of Civil Procedure 736 for an order allowing foreclosure of a lien.
- The Bank is seeking foreclosure of its lien on the Murphys' homestead.
- In January 2006, the Murphys obtained a loan from the Bank and refinanced the existing mortgage on their home.
- An employee of the Bank promised the Murphys that if they accepted the loan from the Bank, the Murphys would be able to refinance the loan with the Bank after two years at a lower fixed rate of interest and with no additional closing costs.
- The Murphys relied upon this alleged oral promise in deciding to refinance the loan with the Bank.
- Before the two-year anniversary, the Murphys began requesting that the loan be refinanced in accordance with the Bank's alleged promise, but the Bank ignored the Murphys' requests.
- Just before the two-year anniversary of the loan from the Bank, the Bank demanded additional interest and escrow payments. The Murphys paid

these amounts in January and February of 2008, while requesting the Bank to refinance the loan as the Bank allegedly had promised.

- The Murphys are prepared and able to pay the past due principal and interest at a lower rate in line with the Bank's alleged representations.

The Murphys suggest in their allegations that they paid the amounts due under the Loan Documents for two years and then asked the Bank for the refinancing that it allegedly had promised. In their petition, the Murphys requested a declaratory judgment that the Bank and its successors are not entitled to foreclose the lien on the Murphys' homestead. The Murphys also sought specific performance of the Bank's alleged promise to refinance the loan.[1] Even though the Murphys cannot be held personally liable under the Loan Documents, the Murphys requested attorney's fees under the Texas Declaratory Judgments Act.

In response, the Bank counterclaimed, seeking declaratory relief under the same statute. The Bank asserted that the alleged promise by an employee of the Bank did not excuse the Murphys' failure to comply with their obligations under the Loan Documents. The Bank asked the trial court to declare that the Murphys were in default under the Loan Documents. The Bank also sought attorney's fees under the Texas Declaratory Judgments Act both for defending against the Murphys' claim for declaratory relief and for prosecuting the Bank's counterclaim for declaratory relief.

In its motion for summary judgment, the Bank sought attorney's fees and costs under the Texas Declaratory Judgments Act. The Bank sufficiently stated a summary-judgment ground[2] in which it sought attorney's fees and costs both for defending against the Murphys' claim for declaratory relief and for prosecuting the Bank's counterclaim for declaratory relief.[3]

In its judgment, the trial court granted summary judgment, denied all relief sought by the Murphys, declared that the Murphys were in default under the Loan Documents, and awarded the Bank attorney's fees under section 37.009 of the Texas Civil Practice and Remedies Code. The Bank successfully defended against the Murphys' declaratory-judgment claim and obtained declaratory relief against the Murphys. Under section 37.009, the Bank was eligible for an award of attorney's fees on two bases: (1) as a party defending a claim for declaratory relief and (2) as a party who obtained declaratory relief. *See Allstate Ins. Co. v. Hallman,* 159 S.W.3d 640, 641–43 (Tex.2005) (holding that appeal

---

1. In the alternative, the Murphys asserted damage claims based upon allegations of common-law fraud and violations of the Texas Deceptive Trade Practices Act.

2. Summary-judgment grounds may be stated concisely, without detail or argument. *See Allen v. City of Baytown,* No. 01–09–00914–CV, 2011 WL 3820963, at *7 (Tex.App.-Houston [1st Dist.] Aug. 25, 2011, no pet.) (mem. op.); *Coleman v. Revak,* No. 01–07–00438–CV, 2008 WL 2466276, at *2 (Tex.App.-Houston [1st Dist.] June 19, 2008, no pet.) (mem. op.); *Conquistador Petroleum, Inc. v. Chatham,* 899 S.W.2d 439, 441–42 (Tex.App.-Eastland 1995, writ denied).

3. In its motion, the Bank asked the trial court to "award [the Bank] all relief to which it is entitled, including attorney's fees and costs." The Bank also stated that "[the Bank] is entitled to recover $116,505.75 in reasonable and necessary attorney's fees and court costs pursuant to section 37.009 of the Texas Civil Practice & Remedies Code because [the Bank] seeks declaratory relief and '[a]s a result of this lawsuit being filed, [the Bank] was forced to retain the undersigned attorneys to provide legal services reasonably necessary to prosecute *and defend* this action.' " (emphasis added).

was not moot in light of trial court's discretion under section 37.009 to award attorney's fees to party seeking declaratory relief or defending against a claim for declaratory relief); *Petroleum Analyzer Co., L.P. v. Olstowski*, No. 01–09–00076–CV, 2010 WL 2789016, at *21 (Tex.App.-Houston [1st Dist.] Jul. 15, 2010, no pet.) (holding trial court properly awarded attorney's fees to party defending against claim for declaratory relief) (mem. op.); *Bradt v. State Bar of Texas*, 905 S.W.2d 756, 759–60 (Tex.App.-Houston [14th Dist.] 1995, no writ) (same as *Petroleum Analyzer Co., L.P.*). The trial court had discretion to award the Bank these fees on either basis. *See Hallman*, 159 S.W.3d at 641–43; *Petroleum Analyzer Co., L.P.*, 2010 WL 2789016, at *21; *Bradt*, 905 S.W.2d at 759–60.

On appeal, the Murphys assert that the substance of the Bank's declaratory-judgment claim is a claim for breach of the Loan Documents, and the majority agrees. In the Bank's declaratory-judgment claim, the Bank did not seek relief based upon the Murphys' failure to comply with the Loan Documents. Rather, the Bank sought declaratory relief regarding the Murphys' contention that the alleged promise by the Bank meant that, beginning in February 2008, the Murphys did not have to comply with the Loan Documents. Significantly, the relief the Bank requested and obtained was declaratory relief, not breach-of-contract relief. *See* Tex. Civ. Prac. & Rem.Code Ann. § 37.004(a) (West 2013) (stating that, under the Texas Declaratory Judgments Act, a person interested under a deed, written contract, or other writings constituting a contract may have determined any question of construction or validity arising under the instrument or contract and obtain

a declaration of rights, status, or other legal relations thereunder). Because the Bank successfully defended against the Murphys' declaratory-judgment claim and successfully prosecuted its own declaratory-judgment claim, the trial court had discretion to award the Bank attorney's fees under section 37.009. *See Hallman*, 159 S.W.3d at 641–43; *Petroleum Analyzer Co., L.P.*, 2010 WL 2789016, at *21; *Bradt*, 905 S.W.2d at 759–60.

The majority also concludes that the substance of the Murphys' declaratory-judgment claim was not a request for declaratory relief but rather a request for an injunction against the Bank to stop it from obtaining foreclosure of its lien on the Murphys' homestead. Thus, the majority suggests that the Bank cannot recover attorney's fees for defending against the Murphys' claim for declaratory relief because the Murphys were not asserting such a claim. In both their original and amended petitions, after noting that the Bank was seeking foreclosure, the Murphys "pray for declaratory judgment that [the Bank] or its successors are not entitled to foreclose on the debt," and the Murphys "request that they be awarded their attorneys fees for seeking this relief." In neither pleading do the Murphys request any injunctive relief. They do not request a temporary restraining order, a temporary injunction, or a permanent injunction. The words "injunction," "injunctive," and "equitable" are not found in either petition. In its motion for summary judgment, the Bank mentioned that the Murphys were asserting a claim for declaratory relief, and the Bank did not state that the Murphys were seeking injunctive relief.[4] The majority indicates that the substance of the Murphys' petition includes a request for injunctive relief rather

---

4. The majority suggests that the Bank indicated in its motion that the Murphys were seeking injunctive relief rather than declaratory relief.

than declaratory relief because the Murphys' goal was to stop the foreclosure action. The Murphys may have filed this suit with the goal of stopping the pending foreclosure action brought by the Bank, but the Murphys were free to seek this goal by a variety of means, including the assertion of a claim for declaratory relief. Having this goal does not mean that the Murphys must have been seeking an injunction rather than declaratory relief.[5] Under the plain meaning of the language they chose in both of their petitions, the Murphys did not seek injunctive relief, and they did seek declaratory relief.

The majority also relies upon two cases in which the court held that a claimant asserting a breach-of-contract claim cannot add a declaratory-judgment claim that duplicates the relief already sought in the breach-of-contract claim, as a way of obtaining attorney's fees under section 37.009 if attorney's fees are not available under Chapter 38 of the Texas Civil Practice and Remedies Code. *See Cytogenix, Inc. v. Waldroff,* 213 S.W.3d 479, 489–90 (Tex. App.-Houston [1st Dist.] 2006, no pet.); *Kenneth Leventhal & Co. v. Reeves,* 978 S.W.2d 253, 258–59 (Tex.App.-Houston [14th Dist.] 1998, no pet.). These cases are not on point because the Bank has not asserted a claim for breach of contract or sought attorney's fees under Chapter 38 of the Texas Civil Practice and Remedies Code. The Bank asserted only a claim for declaratory judgment; therefore, the cases upon which the majority relies do not apply. *See Cytogenix, Inc.,* 213 S.W.3d at 489–90; *Kenneth Leventhal & Co.,* 978 S.W.2d at 258–59

The Bank successfully defended against the Murphys' declaratory-judgment claim and successfully prosecuted its own declaratory-judgment claim. Accordingly, the trial court had discretion to award the Bank attorney's fees under section 37.009. *See Hallman,* 159 S.W.3d at 641–43; *Petroleum Analyzer Co., L.P.,* 2010 WL 2789016, at *21; *Bradt,* 905 S.W.2d at 759–60.

**The parties intended the debt to be an extension of credit so as to allow the lender to foreclose its lien on the debtors' homestead consistent with the Texas Constitution.**

Under the unambiguous wording of the Loan Documents, the Bank and the Murphys intended the Murphys' debt to the Bank to be an extension of credit under article XVI, section 50(a)(6) of the Texas Constitution. *See* Tex. Const. art. XVI, § 50(a)(6). If the debt has the characteristics of an extension of credit listed in this provision of the Texas Constitution, the Bank may obtain payment of the debt by enforcing its lien on the Murphys' homestead through a forced sale of the homestead. *See id.* To constitute an extension of credit under this provision, the debt must be "without recourse for personal liability against [the Murphys], unless [one of the Murphys] obtained the extension of credit by actual fraud." Tex. Const. art. XVI, § 50(a)(6)(C). Consistent with this requirement, the note the Murphys signed provides that "absent actual fraud, the Note Holder can enforce its rights *under this Note* solely against the property described above and not personally against any owner of such property or the spouse of such owner."[6] Likewise, the security instrument provides that "absent such ac-

---

**5.** Indeed, to date, the method chosen by the Murphys appears to have achieved this goal, despite the lack of any request for injunctive relief. The record indicates that more than four years have passed since the Murphys filed suit and that, so far, no foreclosure has occurred.

**6.** (emphasis added).

tual fraud, Lender can enforce its rights *under this Security Instrument* solely against the property and not personally against the owner of the Property or the spouse of an owner." [7]

**Under the Texas Declaratory Judgments Act, the Texas Legislature gave the trial court authority to award attorney's fees to the lender, even though the debtors are not personally liable under the loan documents.**

The Texas Declaratory Judgments Act is a remedial statute. Tex. Civ. Prac. & Rem.Code Ann. § 37.002(b) (West 2013). Its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations. *Id.* Courts are to liberally construe and administer this statute. *Id.* A court of record within its jurisdiction has the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. *Id.* § 37.003(a) (West 2013). A person interested under a deed, written contract, or other writings constituting a contract may have determined any question of construction or validity arising under the instrument or contract and obtain a declaration of rights, status, or other legal relations thereunder. *Id.* § 37.004(a) (West 2013). The specific enumerations in sections 37.004 and 37.005 of the Civil Practice and Remedies Code do not limit or restrict the trial court's exercise of its general powers to grant declaratory relief in any proceeding in which declaratory relief is sought and a judgment or decree will terminate the controversy or remove an uncertainty. *Id.* § 37.003(c) (West 2013). In any proceeding under the Texas Declaratory Judgments Act, the trial court may award reasonable and necessary attorney's fees as are equitable and just. *Id.* § 37.009 (West 2013).

Under the Texas Declaratory Judgments Act, a person interested in any deed or written contract may seek a declaratory judgment. *See id.* § 37.004; *Aquaduct, L.L.C. v. McElhenie,* 116 S.W.3d 438, 444–45 (Tex.App.-Houston [14th Dist.] 2003, no pet.). In unambiguous terms this statute covers requests for declaratory relief regarding written contracts under which the ·debtors are not personally liable. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 37.003, 37.004; *Aquaduct, L.L.C.,* 116 S.W.3d at 444–45. Thus, the trial court had the power to render a declaratory judgment as to the Murphys' status under the Loan Documents and to award the Bank reasonable and necessary attorney's fees under section 37.009 of the Civil Practice and Remedies Code, even though the Murphys cannot be personally liable under the Loan Documents. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.003, 37.004, 37.009; *Aquaduct, L.L.C.,* 116 S.W.3d at 444–45.

Attorney's fees may be awarded only under a statute or under a contract that provides for their recovery. *See Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.,* 299 S.W.3d 106, 120 (Tex.2009). The Loan Documents provide that the Murphys are not personally liable under those documents and thus they are not personally liable for attorney's fees. Accordingly, the Murphys are not personally liable to pay attorney's fees under a contract. But, the Loan Documents do not contain any language specifically precluding recovery of attorney's fees by the Bank under the Texas Declaratory Judgments Act; therefore, the Bank has not waived its right to recover attorney's fees against the Murphys under this statute. *See Herring v. Heron Lakes Estates Owners Assoc., Inc.,* No. 14–09–00772–CV, 2011 WL 2739517, at *6 (Tex.App.-Hous-

---

7. (emphasis added).

ton [14th Dist.] Jan. 4, 2011, no pet) (holding that for a contracting party to waive its right to recover statutory attorney's fees, the contract must contain language specifically precluding recovery of attorney's fees under the statute in question) (mem. op.). The fact that the Murphys are not personally liable under the Loan Documents does not insulate them from personal liability for attorney's fees under the Texas Declaratory Judgments Act.[8] *See* Tex. Civ. Prac. & Rem.Code Ann. § 37.009; *Aquaduct, L.L.C.*, 116 S.W.3d at 444–45. The plain language of that statute vests the trial court with the power to award attorney's fees to the Bank and against the Murphys, even though the Murphys are not personally liable under the Loan Documents. *See* Tex. Civ. Prac. & Rem.Code Ann. § 37.009; *Aquaduct, L.L.C.*, 116 S.W.3d at 444–45.

**Nothing in article XVI, section 50(a)(6) of the Texas Constitution removes the trial court's authority to award attorney's fees to the lender, even though the debtors are not personally liable under the loan documents.**

In article XVI, section 50(a)(6) of the Texas Constitution, the people of Texas provide in pertinent part:

(a) The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for:

. . .

(6) an extension of credit that:

. . .

(C) is without recourse for personal liability against each owner and the spouse of each owner, unless the owner or spouse obtained the extension of credit by actual fraud. . . .

Tex. Const. art. XVI, § 50(a). In interpreting the Texas Constitution, courts are to rely heavily on the literal text and must give effect to its plain language. *Republican Party of Texas v. Dietz*, 940 S.W.2d 86, 89 (Tex.1997). Under this provision of the Texas Constitution, a homestead is protected from forced sale for the payment of all debts except for the eight types listed in article XVI, section 50(a) of the Texas Constitution. *See* Tex. Const. art. XVI, § 50(a). One of these categories of debts is an "extension of credit" under article XVI, section 50(a)(6). *See* Tex. Const. art. XVI, § 50(a)(6). If a debt does not have all of the characteristics of an "extension of credit" or one of the other seven types of debt listed in this part of

---

**8.** The majority argues that, under the unambiguous language of Section 9 of the Security Instrument, this provision supplies the exclusive remedy for the Bank to recover attorney's fees in legal proceedings within the scope of Section 9. *See ante* at p. 638, n. 5. Under Section 9, amounts paid by the Bank that fall within the scope of this provision become additional nonrecourse debt of the Murphys. The majority asserts that the analysis in this dissent conflicts with Section 9 of the Security Instrument. The Murphys have not asserted this argument, or any other under Section 9, either in the trial court or on appeal. Even presuming that the attorney's fees awarded to the Bank fall within the scope of Section 9, the only amounts that become additional debt are "[a]ny amounts disbursed by [the Bank] under this Section 9," and these amounts only

become payable "upon notice from [the Bank] to [the Murphys] requesting payment." The record contains no evidence showing that the Bank treated these attorney's fees as being disbursed under Section 9 or that the Bank requested payment of these amounts under that provision. In any event, the recovery of attorney's fees by the Bank under section 37.009 does not conflict with the language of Section 9. Nothing in Section 9 states that the remedy provided therein is the exclusive remedy of the Bank. To find a waiver of the Bank's right to recover attorney's fees under section 37.009, there must be specific language in the Loan Documents precluding recovery of attorney's under this statute. *See Herring*, 2011 WL 2739517, at *6. The Loan Documents contain no such language.

the Texas Constitution, then the debtor's homestead is not subject to a forced sale to pay the debt. *See id.* If a debt has all of the characteristics of an "extension of credit," then the debtor's homestead is subject to a forced sale to pay the debt. *See id.* One of these characteristics is that the debtor not be subject to personal liability for the debt. *See id.* Under the unambiguous language of the Loan Documents, the Murphys and the Bank intended the Loan Documents to be an extension of credit under article XVI, section 50(a)(6) of the Texas Constitution. For this reason, the Loan Documents provide that absent actual fraud, the holder of the debt can enforce its rights under the Loan Documents solely against the Murphys' homestead and not personally against the Murphys.[9] Applying the plain meaning of its text, nothing in article XVI, section 50(a) of the Texas Constitution provides that trial courts lack the power to order debtors under an extension of credit to pay a creditor's attorney's fees under the Texas Declaratory Judgments Act. *See id.* This part of the Texas Constitution speaks to when a creditor can obtain a forced sale of the debtor's homestead to pay the debt. *See id.* It does not address whether the Legislature may enact statutes giving courts the power to hold debtors personally liable for attorney's fees in declaratory-judgment proceedings. *See id.* Thus, when article XVI, section 50(a)(6) of the Texas Constitution took effect in 1998, it did not invalidate section 37.009 of the Texas Civil Practice and Remedies Code as to declaratory-judgment actions regard-

ing extensions of credit. *See id.* The majority errs in concluding that this constitutional provision conflicts with section 37.009 of the Texas Civil Practice and Remedies Code. *See ante* at pp. 634-39.

To support this conclusion, the majority cites *Fein v. R.P.H., Inc.,* a case in which this court held that a debtor under a nonrecourse note was not personally liable under the note. *See* 68 S.W.3d 260, 266 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). In *Fein,* no party sought attorney's fees in a declaratory-judgment action regarding the nonrecourse note. *See id.* The *Fein* case is not on point.

The majority also cites *In re Mullin,* a case in which a bankruptcy court held that, under the plain meaning of the promissory note in an extension of credit under article XVI, section 50(a)(6) of the Texas Constitution, the debtors were not personally liable under the note for the creditor's attorney's fees. *See* 433 B.R. 1, 17 (Bankr. S.D.Tex.2010). In *In re Mullin,* no party sought attorney's fees in a declaratory-judgment action regarding the extension of credit. *See id.* The *In re Mullin* case is not on point.

The majority cites several cases for the proposition that a request for declaratory relief, by itself, does not change the basic character of a lawsuit. *See ante* at p. 638. But, even before the Bank filed its counterclaim seeking declaratory relief, the basic character of the lawsuit already included a declaratory-judgment claim by the Murphys, which, by itself, allowed the trial

---

9. The majority states that the nonrecourse status of the Loan Documents was established in part by the Texas Constitution. *See ante* at p. 638. This statement is incorrect. The nonrecourse status of the Loan Documents was established only by the unambiguous language of those documents. The Murphys and the Bank could have agreed that the Murphys are subject to personal liability under the

Loan Documents. They did not do so because the Bank wanted the right to foreclose on the Murphys' homestead as allowed under article XVI, section 50(a)(6) of the Texas Constitution. *See* Tex. Const. art. XVI, § 50(a)(6). Nonetheless, the Texas Constitution does not establish the terms of the Murphys' debt; the Loan Documents perform that function.

court to award the Bank attorney's fees. *See Hallman,* 159 S.W.3d at 641–43; *Petroleum Analyzer Co., L.P.,* 2010 WL 2789016, at \*21; *Bradt,* 905 S.W.2d at 759–60.

Without citing any case law supporting its holding, this court refuses to give effect to a Texas statute that, under its unambiguous language, vested the trial court with the power to award attorney's fees to the Bank. Under the Texas Constitution and the Texas Declaratory Judgments Act, the trial court had the authority to award attorney's fees to the Bank and against the Murphys, even though the Murphys were not personally liable under the Loan Documents. *See* Tex. Const. art. XVI, § 50(a)(6); Tex. Civ. Prac. & Rem.Code Ann. § 37.009; *Hallman,* 159 S.W.3d at 641–43; *Petroleum Analyzer Co., L.P.,* 2010 WL 2789016, at \*21; *Aquaduct, L.L.C.,* 116 S.W.3d at 444–45; *Bradt,* 905 S.W.2d at 759–60. The trial court did not err in awarding attorney's fees to the Bank.

For the foregoing reasons, this court should affirm the trial court's award of attorney's fees to the Bank. Because it fails to do so, I respectfully dissent.