# IN THE SUPREME COURT OF TEXAS

════════════
No. 13-0236
════════════

WELLS FARGO BANK, N.A., PETITIONER,

v.

PATRICK O'BRIEN MURPHY A/K/A O'BRIEN MURPHY AND
BEVERLY MURPHY, RESPONDENTS

═══════════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS
═══════════════════════════════════════════════════════════

**Argued October 15, 2014**

JUSTICE GREEN delivered the opinion of the Court.

JUSTICE JOHNSON did not participate in the decision.

In this dispute between two home-equity borrowers and their lender, we must determine whether the parties' loan agreement or the Texas Constitution prohibits an award of attorney's fees in the borrowers' separate and original declaratory judgment action that invoked the automatic stay and dismissal provisions of Texas Rule of Civil Procedure 736.11. The court of appeals held that neither party had pleaded a cognizable claim for declaratory relief and the nonrecourse status of the home-equity loan prohibited a personal judgment for attorney's fees against the borrowers. ___ S.W.3d ___, ___ (Tex. App.—Houston [14th Dist.] 2013). We hold that the home-equity borrowers, who filed a separate and original declaratory judgment action, may not avoid personal liability for

any resulting fee award. Accordingly, we reverse the court of appeals' judgment in part and reinstate the trial court's judgment in favor of the lender.

## I. Factual and Procedural Background

Patrick O'Brien Murphy and Beverly Murphy (collectively "the Murphys") refinanced their existing home loan by obtaining a $252,000 home-equity loan from Wells Fargo Bank, N.A. in January 2006. The parties executed a note and an accompanying security instrument that created a home-equity lien on the Murphys' homestead. Both loan documents memorialize or secure an "extension of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution" and recite that the "Note is given without personal liability against each owner."

The Murphys quickly fell behind on their loan obligations. They failed to pay their property taxes in 2007, 2008, and 2009, and their monthly loan payments were late beginning in November 2006. They stopped making loan payments altogether in February 2008. Shortly after the Murphys stopped making payments, Wells Fargo sent them notice of default, acceleration, and intent to foreclose. When the Murphys did not cure their default, Wells Fargo filed an application in the 295th District Court for an expedited court order authorizing foreclosure pursuant to the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 736.1.

The Murphys then filed a separate and original proceeding in the 55th District Court. Pursuant to Rule 736.11(a), the filing of the Murphys' lawsuit automatically stayed Wells Fargo's application for an expedited foreclosure.[1] Upon the Murphys' motion and pursuant to Rule

---

[1] The relevant portion of Rule 736.11(a) states: "A proceeding or order under this rule is automatically stayed if a respondent files a separate, original proceeding in a court of competent jurisdiction that puts in issue any matter related to the origination, servicing, or enforcement of the loan agreement, contract, or lien." TEX. R. CIV. P. 736.11(a).

736.11(c), the 295th District Court dismissed Wells Fargo's application.[2]  In their separate and original proceeding, the Murphys pleaded for specific performance of an oral contract to refinance the loan, declaratory judgment, and common law fraud.  The Murphys' petition also requested attorney's fees.  The Murphys later amended their petition to assert a claim under the Texas Deceptive Trade Practices—Consumer Protection Act (DTPA).  *See generally* TEX. BUS. & COM. CODE § 17.50.  Wells Fargo answered with a general denial and later amended its answer to assert several affirmative defenses and a counterclaim for declaratory judgment.  In its amended answer, Wells Fargo requested attorney's fees pursuant to the Uniform Declaratory Judgments Act (UDJA). *See* TEX. CIV. PRAC. & REM. CODE § 37.009.

The parties filed competing motions for summary judgment.  Wells Fargo moved for summary judgment on all of the Murphys' claims and its own claim for declaratory relief, requesting attorney's fees for both prosecuting and defending a declaratory judgment action.  The Murphys opposed Wells Fargo's motion, arguing, among other things, that Wells Fargo's claims should not be characterized as requesting declaratory relief.  However, the Murphys never challenged the characterization of their own claims requesting declaratory relief.  Following a hearing, the trial court denied the Murphys' motion, granted Wells Fargo's motion, found the Murphys had defaulted on their home-equity loan, and ordered the Murphys to pay Wells Fargo $116,505.75 in attorney's fees.

---

[2] The relevant portion of Rule 736.11(c) states:

> Within ten days of filing suit, the respondent must file a motion and proposed order to dismiss or vacate with the clerk of the court in which the application was filed giving notice that respondent has filed an original proceeding contesting the right to foreclose in a court of competent jurisdiction.  If no order has been signed, the court must dismiss a pending proceeding.

TEX. R. CIV. P. 736.11(c).

3

The Murphys appealed the trial court's summary judgment rulings and the attorney's fee award in favor of Wells Fargo. The court of appeals affirmed the trial court's summary judgment that the Murphys had defaulted. ___ S.W.3d at ___. However, the court of appeals reversed the attorney's fee award. *Id.* In doing so, the court of appeals held that neither party had pleaded for declaratory relief and that the nonrecourse status of the home-equity loan prohibited a personal judgment against the Murphys. *Id.* at ___.

Wells Fargo petitioned this Court for review of the attorney's fee award issue. We granted the petition. 57 TEX. SUP. CT. J. 753 (June 20, 2014).

## II. Wells Fargo's Attorney's Fee Award

In challenging the court of appeals' ruling on attorney's fees, Wells Fargo contends that (1) both parties pleaded for declaratory relief, and (2) the parties' home-equity loan agreement and the Texas Constitution do not prohibit a personal judgment for attorney's fees against the Murphys. We address Wells Fargo's contentions in turn.

### A. Grounds for the Attorney's Fee Award

Wells Fargo's first contention—that both parties' pleadings support the fee award—requires us to analyze the pleadings and determine whether the parties pleaded cognizable claims for declaratory relief. Generally, a party may not recover attorney's fees unless authorized by statute or contract. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 119 (Tex. 2009). The UDJA authorizes a trial court to award "reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE § 37.009. Absent

4

exceptions not applicable here, the party requesting attorney's fees must affirmatively plead for them to be eligible for a judgment containing a fee award. *See* TEX. R. CIV. P. 301.

In the body of its first amended answer and counterclaim, Wells Fargo pleaded that it "is entitled to recover its attorney's fees. . . pursuant to Section 37.009 of the Texas Civil Practice & Remedies Code." Well Fargo's prayer for relief generally requested that its attorney's fees be assessed against the Murphys. Accordingly, Wells Fargo satisfied Rule 301's requirement that it affirmatively plead for an attorney's fee award.

On appeal to this Court, the Murphys contend that, despite the pleadings, Wells Fargo may not recover its attorney's fees because *neither* party pleaded a cognizable claim for declaratory relief. For the first time, the Murphys argue that their own pleadings did not state a cognizable claim for declaratory relief. The Murphys also argue, as they did in the trial court, that Wells Fargo's claim should be re-characterized as being for something other than declaratory relief.

"Parties are restricted on appeal to the theory on which the case was tried." *Davis v. Campbell*, 572 S.W.2d 660, 662 (Tex. 1978). Appellate courts are similarly restricted and may not overlook the parties' trial theories. *See id.* Likewise, in the summary judgment context, "[i]ssues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." TEX. R. CIV. P. 166a(c). A court of appeals commits reversible error when it sua sponte raises grounds to reverse a summary judgment that were not briefed or argued in the appeal. *San Jacinto River Auth. v. Duke*, 783 S.W.2d 209, 209–10 (Tex. 1990) (per curiam). While it is true that courts may raise jurisdictional issues for the first time on appeal and may do so sua sponte, *see Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440,

5

445–46 (Tex. 1993), the UDJA does not confer jurisdiction, but "is merely a procedural device for deciding cases already within a court's jurisdiction." *State v. Morales*, 869 S.W.2d 941, 947 (Tex. 1994) (citation omitted). Therefore, an appellate court may not re-characterize the parties' claims as being for something other than declaratory relief unless the parties preserved the issue for appeal.

Here, both parties pleaded for "declaratory judgment." The pleadings sufficiently characterize the parties' claims as being within the purview of the UDJA. *See, e.g.*, *First Am. Title Ins. Co. of Tex. v. Willard*, 949 S.W.2d 342, 352 (Tex. App.—Tyler 1997, writ denied) ("There is no particular type of pleading required by the [UDJA]."); *Canales v. Zapatero*, 773 S.W.2d 659, 661 (Tex. App.—San Antonio 1989, writ denied). Despite the Murphys' trial strategy and argument on appeal, neither of which challenged the characterization of their own claim, the court of appeals held that *neither* party had pleaded a claim for declaratory relief. ___ S.W.3d at ___. This sua sponte re-characterization of the Murphys' claim was not based upon jurisdictional grounds; rather, it was based upon the "basic character of the litigation." *Id.* Because the Murphys did not preserve their re-characterization argument regarding their own claim in the trial court or even raise it in the court of appeals, it was error for the court of appeals to address it sua sponte. Accordingly, we must accept the Murphys' claim as what it purports to be—a claim for declaratory relief.[3] Because the Murphys pleaded for declaratory relief and Wells Fargo pleaded for the recovery of its attorney's fees for either prosecuting or defending a claim for declaratory relief, the trial court was authorized to enter

---

[3] The Murphys' counsel at oral argument agreed, stating: "I cannot get around the fact that what [the Murphys] filed was a declaratory judgment action. . . . [T]hat's what the pleading says."

6

a judgment awarding Wells Fargo its attorney's fees under the UDJA.[4]  *See* TEX. CIV. PRAC. & REM. CODE § 37.009.

## B.  The Nonrecourse Status of the Home-Equity Loan

Wells Fargo's second contention is that neither the parties' home-equity loan agreement nor the Texas Constitution prohibits a personal judgment for attorney's fees against the Murphys.  To properly analyze Wells Fargo's contention, we must determine whether an award of attorney's fees in a separate and original declaratory judgment action that invokes the automatic stay and dismissal provisions in Texas Rule of Civil Procedure 736.11 is included within the "extension of credit."

Liens against homestead property are not valid unless they are authorized by our Constitution. *See Doody v. Ameriquest Mortg. Co.*, 49 S.W.3d 342, 344–45 (Tex. 2001).  In 1997, Texas voters approved an amendment to our Constitution to allow home-equity lenders to secure home-equity loans with homestead property.  *Id.* at 343.  The parties' loan agreement unambiguously states that it is made pursuant to this constitutional authority.  The Murphys' note states that it is an "extension of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution."  The security instrument defines "extension of credit" to mean "the debt evidenced by the Note, as defined by Section 50(a)(6), Article XVI of the Texas Constitution."  Finally, the note and security instrument both mirror the constitutional provision's language by stating the "Note is given without personal liability against each owner."

---

[4] Because one of Wells Fargo's pleaded grounds for attorney's fees is valid, we do not reach the question of whether Wells Fargo pleaded a cognizable claim for declaratory relief.

No one disputes that "without personal liability against each owner" limits the sources of funds from which Wells Fargo may seek payment of the loan. Courts have traditionally described nonrecourse loans with such language. *See, e.g.*, *Fein v. R.P.H., Inc.*, 68 S.W.3d 260, 266 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) ("A nonrecourse note has the effect of making a note payable out of a particular fund or source, namely, the proceeds of the sale of the collateral securing the note."); *Hinckley v. Eggers*, 587 S.W.2d 448, 450 (Tex. Civ. App.—Dallas 1979, writ ref'd n.r.e.) ("[Nonrecourse] provisions have the effect of making the note payable out of a particular fund or source, namely, the proceeds of a sale of the property covered by the deed of trust."). Moreover, the parties agreed that "the Note Holder can enforce its rights under this Note solely against the property and not personally against any owner of such property." Given this historical context and the parties' own definition, in the event of default, Wells Fargo could seek payment of the home-equity loan only from the collateral, and could not seek a deficiency judgment against the Murphys personally.

The parties propose differing interpretations of the meaning of "extension of credit." Wells Fargo argues that a lender can recover fees or costs for defending against a borrower's separate and original proceeding challenging the foreclosure because those fees were not incurred pursuing a judgment against the borrower based upon the "extension of credit."[5] Ultimately, according to Wells Fargo, the Constitution does not prohibit the recovery of attorney's fees in such a separate and original proceeding if that recovery is otherwise authorized by law. The Murphys contend that their

---

[5] We do not address Wells Fargo's broader argument that when a lender seeks to foreclose on collateral it is also not pursuing a deficiency judgment and is therefore not prohibited from collecting its attorney's fees.

8

separate and original lawsuit merely contested their alleged default, and they implicitly argue for a more expansive definition of "extension of credit."

As a rule, this Court first seeks to resolve disputes upon nonconstitutional grounds. *See, e.g*, *In re B.L.D.*, 113 S.W.3d 340, 349 (Tex. 2003). Conversely, we decide constitutional questions only when we cannot resolve a dispute upon nonconstitutional grounds. *Id.* In accordance with this rule, we first look to the parties' home-equity loan agreement. The parties' agreement defines "extension of credit" in a manner that incorporates the definition of that phrase as used in section 50(a)(6) of the Constitution. Therefore, despite our general rule, we must look to the constitutional definition to interpret the parties' home-equity loan agreement.

We recently defined "extension of credit," for purposes of section 50(a)(6), to consist of "all the terms of the loan transaction." *Sims v. Carrington Mortg. Servs., L.L.C.*, 440 S.W.3d 10, 16 (Tex. 2014). The terms of the loan transaction may include the payment of principal, interest, taxes, insurance premiums, and other related expenses. *Id.* Therefore, despite the parties' loan agreement deferring to constitutional definitions, we look to that very agreement to determine the extension of credit's scope. *See id.*

The parties' loan agreement contains several terms regarding Wells Fargo's recovery of its attorney's fees and other costs. If the attorney's fee award falls within one of these terms, it necessarily falls within the extension of credit's scope and must be without recourse for personal liability. *See id.*; *see also* TEX. CONST. art. XVI § 50(a)(6)(C). The note states that "the Note Holder will have the right to be paid back by [the Borrowers] for all of its costs and expenses in enforcing

this Note to the extent not prohibited by applicable law." Section 9 of the security instrument

provides a much more detailed framework:

> If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument . . . .

> Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

Wells Fargo was awarded its attorney's fees for defending against the Murphys' separate and

original declaratory judgment action that invoked the automatic stay and dismissal provision of

Texas Rule of Civil Procedure 736.11. This factual and procedural scenario presents three ways that

the fee award may fall within one of the loan agreement's terms. First, Wells Fargo might have

incurred "costs and expenses in enforcing th[e] Note." However, Wells Fargo is not enforcing the

note but is rather defending against the Murphys' separate and original declaratory judgment action.

Second, Wells Fargo might have incurred its attorney's fees because the Murphys failed "to perform

the covenants and agreements contained in th[e] Security Instrument." Once again, however, Wells

Fargo is defending against the Murphys' separate and original declaratory judgment action, rather

10

than protecting itself against the Murphys' breach of covenants or agreements contained in the security instrument. Finally, Wells Fargo might have incurred its attorney's fees because "there is a legal proceeding that might significantly affect [its] interest in the Property." While there was a legal proceeding, it was not a legal proceeding of the kind contemplated by the security instrument, which addresses those proceedings in "bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations." These enumerated legal proceedings have two primary similarities: none of the covered proceedings are brought by the borrower directly against the lender, and none of the covered proceedings contest the merits of the underlying loan. The Murphys' separate and original declaratory judgment action does both, and therefore falls outside of this term's scope.

Here, Wells Fargo applied for an expedited order allowing for the foreclosure of its lien against the Murphys' home. The Murphys did not file a response in that proceeding, but rather invoked the automatic stay and dismissal provisions of Rule 736.11 by filing a separate and original proceeding in the district court. In that proceeding, the Murphys pleaded for specific performance of an oral contract to refinance the loan, declaratory judgment that Wells Fargo was not entitled to foreclose, common law fraud, DTPA violations, and their own attorney's fees. Having initiated a separate and original proceeding, and having provided a mechanism for Wells Fargo to both incur and recover its attorney's fees, there is no basis for the Murphys to hide behind the nonrecourse status of their home-equity loan.

### III.  Reinstatement of the Trial Court's Judgment

An award of attorney's fees under the UDJA is subject to modification based upon certain limiting principles.  Under section 37.009, a trial court may award reasonable and necessary attorney's fees only when it would be equitable and just to do so.  TEX. CIV. PRAC. & REM. CODE § 37.009; *see Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998).  These statutory limitations are complemented by other limiting principles, such as segregation of fees.  *See, e.g.*, *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313–14 (Tex. 2006) (requiring litigants to segregate attorney's fees between claims that allow for the recovery of attorney's fees and claims that do not).

The Murphys did not assert any limiting principles before the trial court or the court of appeals.  Therefore, we do not address whether the amount of the trial court's $116,505.75 attorney's fee award was an abuse of discretion, based upon insufficient evidence, or failed to segregate recoverable and unrecoverable fees.  *See id.*; *Bocquet*, 972 S.W.2d at 21.  We reinstate the trial court's judgment in favor of Wells Fargo for the full amount.

### IV.  Conclusion

Wells Fargo pleaded to recover its attorney's fees for either defending or prosecuting a claim for declaratory relief.  Because the Murphys failed to preserve any challenge to the characterization of their own claim for declaratory relief, the trial court was authorized to enter a judgment awarding Wells Fargo its attorney's fees under the UDJA.  Neither the parties' loan agreement nor the Texas Constitution prohibits a personal judgment against the Murphys for attorney's fees.  Therefore, we reverse the court of appeals' judgment in part and reinstate the trial court's judgment in favor of Wells Fargo.

_____
Paul W. Green
Justice

OPINION DELIVERED: February 6, 2015