**Affirmed and Memorandum Opinion filed November 21, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-18-00708-CV

### MESA SOUTHERN CWS ACQUISITION, LP D/B/A MESA SOUTHERN WELL SERVICING, Appellant

### V.

### DEEP ENERGY EXPLORATION PARTNERS, LLC, Appellee

**On Appeal from the 151st District Court
Harris County, Texas
Trial Court Cause No. 2018-10732**

## M E M O R A N D U M   O P I N I O N

In this dispute involving mineral liens, appellant Mesa Southern CWS Acquisition, LP appeals an adverse summary judgment on its claims against appellee Deep Energy Exploration Partners, LLC.  Pursuant to a contract, Mesa provided labor and materials to an oil and gas operator, Deep Operating, LLC. Claiming that it did not receive payment for the full value of its services, Mesa filed three mineral liens in Milam County encumbering certain real, mineral, and

personal property.  After Deep Operating filed for bankruptcy protection, Mesa filed this suit against Deep Operating's parent company, appellee Deep Energy. Deep Energy moved for summary judgment on Mesa's claims, arguing that Mesa contractually waived its right to assert liens against Deep Operating's wells and waived its right to seek payment on the contract from any entity other than Deep Operating.  The trial court granted Deep Energy's motion and dismissed Mesa's claims.  Because we agree that the contract between Mesa and Deep Operating forecloses all of Mesa's claims against Deep Energy, we affirm the trial court's judgment.

## Background

Mesa provides services and supplies to oil and gas operators, such as Deep Operating.  In October 2016, Mesa and Deep Operating signed a Master Service Agreement ("MSA") that established the terms and conditions of any work performed by Mesa for Deep Operating.  The MSA identified Mesa as "CONTRACTOR," Deep Operating as "COMPANY," and "the services . . . to be performed and/or the materials . . . to be supplied" as the "Work."  As relevant here, the MSA included a provision relating to "Payment of Claims," which stated in its entirety:

> CONTRACTOR shall promptly pay all bills, other indebtedness for labor and for materials furnished or purchased by it involved in or arising out of this Agreement, and shall exhibit receipted payrolls for all labor employed, and receipted statements or invoices for all material used.  To the maximum extent permitted by applicable law, CONTRACTOR agrees that, in consideration for entering into this Agreement, CONTRACTOR irrevocably waives any and all rights to lien, sequester, attach, seize or assert a privilege over the Work performed by CONTRACTOR, the real property upon which the Work is located and any hydrocarbon product associated with the Work.  CONTRACTOR acknowledges that in entering into this Agreement, CONTRACTOR is relying on the creditworthiness of

2

COMPANY and shall look solely and exclusively to COMPANY for payment and shall not rely on any statutory, common law or other right to seize, attach, sequester, assert a privilege, lien or otherwise encumber the real property of COMPANY or upon which the Work is located or any hydrocarbon associated therewith. Accordingly, CONTRACTOR agrees to keep and maintain the Work free from any liens or privileges asserted by CONTRACTOR or any of its subcontractors both during and after completion of the Work under this Agreement.

Mesa performed work for Deep Operating on three wells and mineral leaseholds, identified as Key #2 Well, Owens Grindle #1 Well, and Von Goten #2 Well, all located in Milam County. Mesa invoiced Deep Operating for work it performed in the latter part of 2016 and early 2017, but, according to Mesa, Deep Operating did not pay Mesa the full amount owed.

Deep Operating filed for bankruptcy protection under United States Bankruptcy Code Chapter 11 on June 8, 2017. In the bankruptcy proceeding, Deep Operating asserted that it was a "wholly owned subsidiary of Deep Energy Exploration Partners, LLC."

Shortly after Deep Operating filed its bankruptcy petition, Mesa filed a lien against the Key #2 Well for $104,944.99, a lien against the Owens Grindle #1 Well for $69,838, and a lien against the Von Goten #2 Well for $17,540. In supporting affidavits, Mesa swore that it performed labor and furnished materials as a contractor under a contract with Deep Operating and/or Deep Energy, who Mesa identified as the operator or operators and/or mineral property owner or owners of the land, oil, gas, or other mineral leasehold subject to the liens.

Mesa also filed this suit against Deep Energy, asserting claims for: (1) breach of duty under chapter 162 of the Texas Property Code; (2) recovery of

3

"trapped funds" under chapter 56 of the Texas Property Code; and (3) declaratory relief and request for an order of sale for foreclosure of the three lien claims.

Deep Energy denied Mesa's allegations and asserted counterclaims for breach of contract and fraudulent lien. On the same day it filed its answer, Deep Energy moved for traditional summary judgment on all of Mesa's claims. Deep Energy argued that all of Mesa's claims were barred by the MSA, in which Mesa contractually waived its rights to: (1) seek payment from any entity other than Deep Operating; and (2) file the liens at issue.

The trial court granted Deep Energy's motion without specifying the grounds for its ruling and dismissed Mesa's claims with prejudice. The court also ordered that Mesa file a release of any lien filed against Deep Energy in Milam County relating to the work Mesa performed for Deep Operating. After Deep Energy nonsuited its counterclaims, the summary judgment became final.

Mesa timely appealed.

## Standard of Review

We review a trial court's order granting a traditional summary judgment de novo. *Mid-Century Ins. Co. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007). In reviewing a grant of summary judgment, we consider all the evidence in the light most favorable to the nonmovant. *Ron v. AirTran Airways, Inc.*, 397 S.W.3d 785, 788 (Tex. App.—Houston [14th Dist.] 2013, no pet.). When reviewing a traditional summary judgment, we must determine whether the movant met its burden to establish that (1) no genuine issue of material fact exists and (2) the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215-16 (Tex. 2003) (citing *Haase v. Glazner*, 62 S.W.3d 795, 797 (Tex. 2001)). To be entitled to

4

summary judgment, a defendant must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997); *Chrismon v. Brown*, 246 S.W.3d 102, 105-06 (Tex. App.—Houston [14th Dist.] 2007, no pet.). When, as here, the trial court grants a motion for summary judgment without specifying the grounds, we will affirm the trial court's judgment if any of the independent grounds supporting the motion are meritorious. *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872-73 (Tex. 2000).

## Analysis

Mesa contends that the summary judgment is error because Deep Energy did not conclusively negate at least one element of each of Mesa's claims and did not conclusively establish each element of an affirmative defense. For the most part, Mesa commits its appellate briefing to the former proposition: that Deep Energy failed to conclusively negate in its summary judgment motion at least one element of each of Mesa's claims. This is true, but Mesa constructs "straw man" arguments by attacking positions that Deep Energy did not assert as grounds for summary judgment. In its summary-judgment motion, Deep Energy did not seek to disprove an element or elements of Mesa's claims. Rather, Deep Energy sought summary judgment on all of Mesa's claims based on the affirmative defense of waiver.[1]

A party may assert waiver as an affirmative defense against another who intentionally relinquishes a known right or engages in intentional conduct

---

[1] Deep Energy did not plead the affirmative defense of waiver in its answer, *see* Tex. R. Civ. P. 94, but because Mesa did not object to Deep Energy's reliance on waiver in its summary-judgment motion, the issue was determined by consent and we may consider it. *See Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991).

inconsistent with claiming that right. *Trelltex, Inc. v. Intecx, L.L.C.*, 494 S.W.3d 781, 790 (Tex. App.—Houston [14th Dist.] 2016, no pet.); Tex. R. Civ. P. 94. To establish entitlement to summary judgment based on a waiver defense, the movant must show: (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right. *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). Intent to waive must be clear, decisive, and unequivocal. *Shannon v. Mem'l Drive Presbyterian Church U.S.*, 476 S.W.3d 612, 627 (Tex. App.—Houston [14th Dist.] 2015, pet. denied); *Thompson v. Kerr*, No. 14-08-00978-CV, 2010 WL 2361636, at *4 (Tex. App.— Houston [14th Dist.] June 15, 2010, no pet.) (mem. op.). A court should conclude a waiver occurred only when a party unequivocally manifested the intent not to assert its rights. *Shannon*, 476 S.W.3d at 627. Waiver of a contractual right may be express or implied from conduct. *G.T. Leach Builders, Inc. v. Sapphire V.P., LP*, 458 S.W.3d 502, 511 (Tex. 2015); *Pounds v. Liberty Lloyds of Tex. Ins. Co.*, 528 S.W.3d 222, 226 (Tex. App.—Houston [14th Dist.] 2017, no pet.). If Deep Energy failed to conclusively establish its waiver defense as to each claim, we must reverse the summary judgment. *See Wilson v. Fleming*, 566 S.W.3d 410, 423 (Tex. App.—Houston [14th Dist.] 2018, pet. filed).

We examine whether the record shows conclusively that Mesa waived each of its claims. Mesa asserted three claims against Deep Energy, seeking to recover Mesa's actual damages in the amount of $192,322.99. In its first claim, Mesa alleged that Deep Energy violated Property Code chapter 162, known as the Trust Fund Act. Under the Act, construction payments made to a contractor or subcontractor under a construction contract for the improvement of real property are considered funds held in trust. *See* Tex. Prop. Code § 162.001(a).

6

Subcontractors or suppliers who furnish labor or material for the construction project are considered beneficiaries of any trust funds paid or received in connection with the improvement. *Id.* § 162.003. A trustee misapplies trust funds if it "intentionally or knowingly or with intent to defraud, directly or indirectly retains, uses, disburses, or otherwise diverts trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds." *Id.* § 162.031(a). A party who misapplies trust funds under the Trust Fund Act is subject to civil liability to trust-fund beneficiaries whom the Act was designed to protect. *See Dealers Elec. Supply Co. v. Scroggins Constr. Co.*, 292 S.W.3d 650, 657 (Tex. 2009); *C&G Inc. v. Jones*, 165 S.W.3d 450, 453 (Tex. App.—Dallas 2005, pet. denied).

In its second and third claims, Mesa alleged that it was entitled to recover the amounts allegedly owed by virtue of its three mineral liens. Chapter 56 of the Property Code creates lien rights for a contractor who performs labor or furnishes materials to a mineral property owner related to the drilling or operating of an oil or gas well or an oil or gas pipeline. The statute is a "statutory fund-trapping provision" that allows subcontractors to trap funds payable to a general contractor if the owner receives notice from the subcontractors that they are not being paid. *Page v. Marton Roofing, Inc.*, 102 S.W.3d 733, 734 (Tex. 2003). Accordingly, Mesa sought recovery of its trapped funds under chapter 56 or, alternatively, Mesa sought a declaration that its mineral liens were valid and properly perfected and an award of foreclosure on those liens.

Deep Energy moved for summary judgment on the ground that Mesa, by signing the MSA, waived its statutory and common law rights to assert claims against anyone other than Deep Operating for the work Deep Operating performed under the MSA. Deep Energy's argument requires us to construe the MSA's key

provisions. We apply well-established contract interpretation principles. When construing a contract, we give contract terms their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). We construe contracts from a utilitarian standpoint, bearing in mind the particular business activity sought to be served, and we avoid, when possible and proper, a construction that is unreasonable, inequitable, or oppressive. *Frost Nat'l Bank v. L&F Distrib., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005). We examine and consider the entire writing to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003).

In support of its summary-judgment argument, Deep Energy relied on the MSA's Payment of Claims clause, in which Mesa "acknowledges that in entering into this Agreement, [Mesa] is relying on the creditworthiness of [Deep Operating] and *shall look solely and exclusively* to [Deep Operating] for payment." (Emphasis added). Based on this clause, Deep Energy argued that the MSA conclusively precludes Mesa's claims, which ultimately seek a money judgment for $192,322.99 or foreclosure of liens in an amount to satisfy the alleged debt. We agree that all of Mesa's claims against Deep Energy are waived under the MSA.

The Dallas Court of Appeals has addressed this issue in analogous circumstances—i.e., when a party to a contract agrees to seek payment or damages only from one source to the exclusion of all others. *See ADT Sec. Servs., Inc. v. Van Peterson Fine Jewelers*, 390 S.W.3d 603, 606-07 (Tex. App.—Dallas 2012, no pet.). In *ADT*, the contract's limitation-of-liability clause provided that a customer would "look exclusively to customer's insurer to recover for injuries or damage." *Id.* The court held that the clause barred the customer from recovering

8

damages from an entity other than the insurer. *See id.* ("Because Van Peterson contractually agreed to seek recovery from its insurer, and only its insurer, in the event of a loss due to breach of contract or negligence, and because Van Peterson now seeks to recover those damages from ADT, the trial court erred by denying ADT's traditional motion for summary judgment on Van Peterson's claims.").

Similarly, in *Wells Fargo Bank, N.A. v. Murphy*, the Supreme Court of Texas was tasked with deciding whether the status of a loan agreement was recourse (in which case the debtor would be exposed to personal liability under the note) or nonrecourse (in which case the note would be payable only from a particular fund or source and the debtor would not be exposed to personal liability). *See* 458 S.W.3d 912, 917 (Tex. 2015). The loan agreement, between homeowners and a bank, provided that the bank, as the note holder, "can enforce its rights under this Note solely against the property and not personally against any owner of such property." *Id.* Based on that language, the court held that the bank "could seek payment of the home-equity loan only from the collateral." *Id.*; *see also Fein v. R.P.H., Inc.*, 68 S.W.3d 260, 265-67 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (note unambiguously provided that creditor's "sole remedy" was enforcement of its security interest in the collateral in the event of debtor's default to the exclusion of the debtor's personal liability).

Here, the terms of the MSA are unambiguous—Mesa agreed that it "shall look solely and exclusively to [Deep Operating] for payment" for Mesa's work. As in *ADT*, because Mesa contractually agreed to seek payment from Deep Operating—and only Deep Operating—Mesa cannot now recover from Deep Energy amounts allegedly owed but unpaid for its work on Deep Operating's wells. *See ADT*, 390 S.W.3d at 607; *see also Wells Fargo*, 458 S.W.3d at 917; *Fein*, 68 S.W.3d at 265-67. In contractually limiting its recourse for payment

9

solely to Deep Operating, Mesa cannot obtain satisfaction of the alleged debt from Deep Energy either by direct money judgment or through foreclosure and sale based on purported lien rights.

Our interpretation of the phrase "shall look solely and exclusively to [Deep Operating] for payment" is bolstered by the additional specific reference in the MSA to Deep Operating's "creditworthiness." "Creditworthy" means "financially sound enough that a lender will extend credit in the belief that default is unlikely; fiscally healthy." Black's Law Dictionary, "Creditworthy" (11th ed. 2019). By agreeing to rely on Deep Operating's creditworthiness, Mesa relied on Deep Operating's ability to pay and understood that it could seek payment only from Deep Operating. Mesa bore the risk of potential loss, or the burden of pursuing its claim as a creditor in bankruptcy proceedings, if ultimately Deep Operating defaulted. In all events, Mesa contractually agreed to look only to Deep Operating for satisfaction of the amounts owed for work performed on Deep Operating's wells.

We conclude that Deep Energy established its waiver defense as a matter of law. The MSA is an unequivocal manifestation that Mesa intentionally relinquished its right to seek payment for its services from any entity other than Deep Operating. *See Trelltex*, 494 S.W.3d at 790; *Shannon*, 476 S.W.3d at 627. This conclusion necessarily precludes recovery on all of Mesa's claims, which seek satisfaction of the alleged debt from Deep Energy. Both chapter 162 and chapter 56 are statutory sources by which a contractor or subcontractor can seek to recover payments allegedly owed. *See* Tex. Prop. Code § 162.001(a) ("payments" made to a contractor or subcontractor under a construction contract for the improvement of real property are considered trust funds covered by the Act); *id.* § 56.002 ("A mineral contractor or subcontractor has a lien to secure *payment* for

10

labor or services related to the mineral activities.") (emphasis added). Further, and without deciding whether Mesa's liens are valid, Mesa may not foreclose on the liens or otherwise enforce the liens against Deep Energy.[2]

We hold that Deep Energy conclusively established its waiver defense that the MSA prohibits Mesa from seeking satisfaction of the alleged debt from Deep Energy as a matter of law. Because the trial court did not err in granting summary judgment on this ground, we overrule Mesa's sole appellate issue.

### Conclusion

Mesa may not recover from Deep Energy any unpaid amounts allegedly incurred during Mesa's work on Deep Operating's wells. We affirm the trial court's judgment in all respects.


/s      Kevin Jewell
        Justice


Panel consists of Justices Jewell, Bourliot, and Zimmerer.

---

[2] The parties dispute the validity of Mesa's liens. Deep Energy argues that Mesa contractually waived its right to assert a mineral lien under chapter 56 against Deep Operating's wells; Mesa argues that its agreement to waive the right to assert a mineral lien is void as against public policy. We need not decide and express no opinion whether Mesa's liens are valid because Mesa is not entitled to recover on the liens against Deep Energy. Thus, the portion of the judgment compelling Mesa to release the liens against Deep Energy is proper.