**Opinion issued February 26, 2026**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-24-00153-CV

————————————

**ALFREDO BARRON AND EDA BARRON, Appellants**

**V.**

**RICHARD L. PFIRMAN, Appellee**

---

**On Appeal from the 61st District Court**
**Harris County, Texas**
**Trial Court Case No. 2018-19685**

---

## MEMORANDUM OPINION

Alfredo and Eda Barron appeal from the trial court's final judgment awarding Richard Pfirman actual damages, prejudgment interest, and attorney's fees in a property dispute. The Barrons contend that the evidence is insufficient to support the jury's damages award, that the trial court erroneously granted summary judgment

on Pfirman's declaratory-judgment claims, and that the pleadings do not support the awards for prejudgment interest or attorney's fees.

We affirm in part and reverse and render in part.

## Background

Richard Pfirman is a real estate investor who owns hundreds of residential properties in Harris County and the surrounding areas. Many of these properties are rental properties that Pfirman rents through his company, All American Properties. Mariano Ernesto Felipe Thomas is the property manager and leasing agent for Pfirman's company.

Between the middle of 2017 and the spring of 2018, Joshua Fowler[1] transferred ownership of several properties owned by Pfirman to himself through forged deeds. Pfirman did not know Fowler, did not sign these deeds, and did not sell these properties to Fowler. Fowler then purported to transfer 13 of those properties[2] from himself to Alfredo and Eda Barron. The Barrons made various

---

[1] Fowler was named as a defendant below but is not a party to this appeal.

[2] Pfirman testified the 13 properties had a combined appraised value of $520,000. The properties include: (1) 5730 Belmark Street (by deed dated August 18, 2017), (2) 8814 Bisley Lane (by deed dated January 2, 2018), (3) 9009 Chatwood Drive (by deed dated August 15, 2017), (4) 9022 Chatwood Drive (by deed dated June 22, 2017), (5) 10810 Cordoba Drive (by deed dated January 20, 2018), (6) 12226 Currin Forest Drive (by deed dated July 14, 2017), (7) 315 Glenburnie Drive (by deed dated January 8, 2018), (8) 9137 Laura Koppe Road (by deed dated June 27, 2017), (9) 9937 Rebel Road (by deed dated August 18, 2017), (10) 5501 Southlea Street (by deed dated August 18, 2017), (11) 5950 Southtown Street (by deed dated September

2

repairs to the properties, some of which had no plumbing or electricity, and sought out their own tenants.

Pfirman did not know that most of these properties had been transferred until the end of 2017 or the beginning of 2018 when he was contacted by the Harris County District Attorney's Office in connection with their investigation into Fowler.[3] Fowler ultimately pled guilty and was convicted of first-degree felony theft in an aggregate amount greater than $300,000.

In March 2018, Pfirman sued Fowler and the Barrons for declaratory relief that the forged deeds to the 13 properties are of no effect and to quiet title to those properties in Pfirman. Pfirman also brought causes of action against the Barrons for civil conspiracy, violation of the Theft Liability Act, tortious interference with contract, unjust enrichment, and quantum meruit. Pfirman sought damages for lost rental income, as well as attorney's fees and court costs.

Pfirman moved for summary judgment, among other things, on his claims for declaratory relief and quiet title. In response, the Barrons argued that Pfirman's motion for summary judgment should be denied because he "did not carry his burden of proving the elements of [his] rightful ownership of the property [one of the

---

3, 2017), (12) 5728 Willow Glen Drive (by deed dated September 3, 2017), and (13) 4610 Woodside Street (by deed dated January 8, 2018).

[3]     Pfirman testified that he found out that the Barrons—who were not tenants—were occupying one property, 9137 Laura Koppe Road, in July 2017.

3

elements in a suit to quiet title] as a matter of law." The trial court granted Pfirman's motion for summary judgment with respect to his "claims for declaratory judgment relief resolving title disputes."

The case proceeded to trial. The jury found in favor of Pfirman on his claims for tortious interference, civil conspiracy, and unjust enrichment against the Barrons and awarded Pfirman $76,000 in damages for lost rent in the past. The jury also awarded Pfirman attorney's fees. The trial court entered judgment on the jury's verdict and incorporated its interlocutory summary judgment on Pfirman's declaratory judgment claims into the final judgment.

This appeal followed.

### Legal Sufficiency of the Evidence of Damages

In their first issue, the Barrons argue that the evidence is legally insufficient to support the jury's award of damages for loss of rental income.

### A. Standard of Review

When reviewing the legal sufficiency of the evidence supporting the jury's findings, we consider all the evidence in the light most favorable to the verdict, indulging every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if reasonable jurors could do so and disregard contrary evidence unless reasonable jurors could not. *Id.* at807, 827. When a party attacks the legal sufficiency of the evidence supporting an

adverse finding on which he did not have the burden of proof, the party must show that no evidence supports the jury's adverse finding. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex. 2011).

We sustain a "no evidence" point if there is no more than a scintilla of evidence to support the finding. *See Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). More than a scintilla of evidence exists if the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (citing *Havner*, 953 S.W.2d at 711); *see Exxon*, 348 S.W.3d at 215 (stating that evidence is legally sufficient if it would enable reasonable and fair-minded people to reach verdict under review). But when the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of the fact's existence, then "the evidence is no more than a scintilla and, in legal effect, is no evidence." *Ford Motor Co.*, 135 S.W.3d at 601 (citation omitted).

## B.    Applicable Law

Loss of rental income is "an appropriate measure of damages for the temporary loss of use of land." *City of Austin v. Teague*, 570 S.W.2d 389, 394 (Tex. 1978).[4]  Rental value is "that amount which, in the ordinary course of business, the

---

[4]    *See also Mullendore v. Muehlstein*, 441 S.W.3d 426, 428 (Tex. App.—El Paso 2014, pet. denied) ("The calculation of damages for temporary injuries to real property should be tailored to the circumstances of the specific case.").

premises would bring or for which they could be rented, or the value, as ascertained by proof of what the premises would rent for, and not the probable profit which might accrue." *Mitropoulos v. Pineda*, No. 01-17-00795-CV, 2018 WL 6205855, at *7 (Tex. App.—Houston [1st Dist.] Nov. 29, 2018, no pet.) (quoting *Teague*, 570 S.W.2d at 394). "The purpose of the measure of damage being based upon the value of the loss of use is to compensate the owner for his loss due to the inability to use the property for its normal purposes." *Mullendore v. Muehlstein*, 441 S.W.3d 426, 428 (Tex. App.—El Paso 2014, pet. denied) (quoting *Etex Tel. Co-op., Inc. v. Sanders*, 607 S.W.2d 278, 281 (Tex. App.—Texarkana 1980, no writ)). Lost rentals, like lost profits, "must be shown by competent evidence and with reasonable certainty." *Teague*, 570 S.W.2d at 395 (noting that "the rule about the certainty of losses of profits is instructive also about the certainty of losses of rentals").[5]

## C. Analysis

Here, the Barrons contend that the evidence is legally insufficient to support the jury's damage award of $76,000 in lost rent in the past. Pfirman disagrees, arguing that the evidence is legally sufficient to support the damages award because there was evidence of the rental value of the properties and that the Barrons interfered with two potential tenants. Specifically, Pfirman points to Thomas's

---

[5] *See also Wood v. Kennedy*, 473 S.W.3d 329, 336 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("The rental value of a property must be established with reasonable certainty.").

6

testimony that, beginning around July 2017, the Barrons prevented Pfirman from renting four of these properties: 9137 Laura Koppe Road, 8814 Bisley Lane, 9022 Chatwood Drive, and 10810 Cordoba Drive. According to Thomas, had Pfirman been able to rent these properties, he would have charged around $1,000 per month.

Thomas testified that, at an unspecified time, he tried to rent the property located at 9937 Rebel Road to an individual named Karen McDonald. He was unable to do so, however, because when McDonald arrived to view the Rebel Road property, the Barrons were at the property. And they instead tried to convince McDonald to rent another property—9022 Chatwood Drive.

Thomas also testified that the Barrons interfered with another potential tenant. Thomas testified that, again at an unspecified time, he tried to rent 8814 Bisley Lane to Tamika Harris. But when Harris arrived to inspect the property, it was occupied by a tenant of the Barrons. Harris did not ultimately rent the property.

"It is not enough that [lost rents] merely be anticipated or hoped for." *See Teague*, 570 S.W.2d at 395. Rather, they must be established with reasonable certainty. *Id.* The only testimony before the jury as to the value of these four properties was Thomas's testimony that he would have charged $1,000 per month had he been able to rent them.

But the record reflects that prior to the execution of the deeds, none of these properties had been leased. Both Thomas and Pfirman testified that these properties

7

had not been leased before 2017 and that they were vacant. Therefore, this is not a situation in which Pfirman was renting these properties to established tenants at the time the deeds were forged in 2017 to 2018 and the Barrons began making repairs to the properties, such that he would have a factual basis for asserting the fair rental value of the property at that time. *See Mitropoulos*, 2018 WL 6205855, at *7. And with respect to the two potential tenants, there was no evidence as to when they tried to rent each property or how much they intended to pay at that time.

Moreover, Thomas testified that he had not "walked" any of these properties and did not know what they looked like inside. He testified that he does not visit the properties he is leasing; instead, potential renters go to the property and then "make a decision on if they want the property or not."

When asked how he knew what to charge for rent if he had not seen the property, Thomas testified that "Pfirman has a property list that he gives us with the prices on them." But Pfirman also testified that he has not walked any of his properties in 15 years and instead relied on "people [to] go out and take videos" and he "would base it on that." And Pfirman did not know what the inside of these four specific properties looked like or what he would have charged for rent at any time during the time period at issue. Thus, there was no evidence of the factual basis to support the $1,000 per month rental figure testified to by Thomas. *See Wood v. Kennedy*, 473 S.W.3d 329, 337–38 (Tex. App.—Houston [14th Dist.] 2014, no pet.)

8

(holding that witnesses' testimony regarding their experience and respective beliefs concerning property's fair market rental value—standing alone—was insufficient to sustain judgment because such evidence does not indicate factual basis behind their valuations).

Furthermore, there was no indication that $1,000 per month represents an accurate assessment of the rental value for each of these four properties for the entire period for which Pfirman sought compensation for loss of rental income, i.e., from the middle of 2017 until the time of trial in November 2023. Or even to what time frame this figure applied.

Thomas did not specify whether the $1,000 represented the current fair market rental value at the time of trial, at the time the deeds were forged, or anytime in between. And there was no evidence that the rental market conditions that may have been present in the middle of 2017 were the same as the rental market conditions through the time of trial. *See Mitropoulos*, 2018 WL 6205855, at *7–8 (noting that there was no evidence that rental market conditions present in at time plaintiff found tenant were same as market conditions during time period for which plaintiff sought compensation for loss of rental income).[6]

---

[6]  *See also Z.A.O., Inc. v. Yarbrough Drive Ctr. Joint Venture*, 50 S.W.3d 531, 546–47 (Tex. App.—El Paso 2001, no pet.) (holding testimony that "current fair market rental value" of property was $2,500 was insufficient to support jury award of $110,000 for loss of rental value suffered in past because "[t]here was no indication that the $2,500 figure represented an accurate assessment of the land's rental value

9

As noted above, to recover damages for loss of rental income, Pfirman was required to establish these damages "with reasonable certainty." *See Teague*, 570 S.W.2d at 395. Thomas's testimony that the Barrons prevented Pfirman from renting four properties beginning in 2017 and that, had he been able to rent these properties, he would have done so for $1,000 per month does not establish with reasonable certainty that the rental value of his properties was $1,000 per month for the over six years before trial. *See Mitropoulos*, 2018 WL 6205855, at *8 ("Pineda's testimony that he was unable to rent his property for over a year and that, when he was able to find a tenant, the rental value of the property was $1700 per month does not establish, with reasonable certainty, that the rental value of his property was $1700 per month for the year prior to finding a tenant.").

We therefore conclude that the evidence was legally insufficient to support the jury's award of $76,000 in damages for loss of rental income. *See id.*; *Z.A.O., Inc. v. Yarbrough Drive Ctr. Joint Venture*, 50 S.W.3d 531, 547 (Tex. App.—El Paso 2001, no pet.).

Because we hold there was legally insufficient evidence to support the only damages awarded by the jury, we likewise conclude that there is no support for the

---

for the duration of the period the land could not be rented due to Appellant's breach" and "[t]here was no testimony as to whether the property could have been rented for $2,500 per month dating back to the time of the breach").

10

trial court's award of prejudgment interest. We sustain the Barrons' first issue and the portion of their third issue challenging prejudgment interest.

## Trespass to Try Title

In their second issue, the Barrons argue that the trial court erroneously granted summary judgment on Pfirman's title claims brought pursuant to the Declaratory Judgment Act because this type of suit must be brought as a trespass-to-try-title action pursuant to Texas Property Code § 22.001(a). Pfirman responds that the Barrons failed to raise this objection to the form of the action in their summary-judgment response and have therefore waived the objection. We agree with Pfirman.

As a prerequisite to presenting a complaint for appellate review, the record must show that a complaint was made to the trial court by a timely request, objection, or motion. TEX. R. APP. P. 33.1(a)(1). Any issue, except legal sufficiency, not expressly presented by the non-movant to the trial court in a written response may not be considered as grounds for reversal on appeal. *See* TEX. R. CIV. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979).[7] Thus, the failure to present an issue to defeat summary judgment in the trial court

---

[7]     *See also Frazer v. Tex. Farm Bureau Mut. Ins. Co.*, 4 S.W.3d 819, 824–25 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

waives the issue on appeal. *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 742–43 (Tex. 2009).[8]

Further, although certain types of property disputes must be brought as trespass-to-try-title actions, *see Martin v. Amerman*, 133 S.W.3d 262, 264–65 (Tex. 2004),[9] the failure to object to a trespass-to-try-title action being brought as a declaratory-judgment action waives the error. *See Mid Pac Portfolio, LLC v. Welch*, No. 01-15-00404-CV, 2016 WL 828150, at *3 (Tex. App.—Houston [1st Dist.] Mar. 3, 2016, no pet.) (mem. op.).[10]

Here, Pfirman moved for summary judgment on his claims for declaratory relief and to quiet title. Specifically, Pfirman sought a declaration that "the forged deeds to Joshua Fowler (and the subsequent deeds from Joshua Fowler to the Barrons) [have] no effect" and "to have the title of each of these 13 properties to be quieted to Plaintiff, Richard L. Pfirman." In response, the Barrons only argued that

---

[8]     *See also Wakefield v. Ayers*, No. 01-14-00648-CV, 2016 WL 4536454, at *9 (Tex. App.—Houston [1st Dist.] Aug. 30, 2016, no pet.) (mem. op.).

[9]     *See also 1–10 Colony, Inc. v. Lee*, 393 S.W.3d 467, 474–75 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); TEX. PROP. CODE § 22.001(a) ("A trespass to try title action is the method of determining title to lands, tenements, or other real property.").

[10]    *See also Teon Mgmt., LLC v. Turquoise Bay Corp.*, 357 S.W.3d 719, 726 (Tex. App.—Eastland 2011, pet. denied); *Washington v. Taylor*, No. 01-08-00255-CV, 2010 WL 1571201, at *4–5 (Tex. App.—Houston [1st Dist.] Apr. 8, 2010, no pet.) (mem. op.); *Krabbe v. Anadarko Petroleum Corp.*, 46 S.W.3d 308, 320–21 (Tex. App.—Amarillo 2001, pet. denied).

12

Pfirman's motion for summary judgment should be denied because he "did not carry his burden of proving the elements of [his] rightful ownership of the property [one of the elements in a suit to quiet title] as a matter of law." They did not object on the basis that they argue here—that the trial court could not quiet title in a declaratory judgment action because a trespass-to-try-title action is the exclusive remedy.[11]

Accordingly, even if Pfirman should have brought the title dispute as a trespass-to-try-title action, any error in the form of the action has been waived. *See Mid Pac Portfolio, LLC*, 2016 WL 828150, at *3; *Washington*, 2010 WL 1571201, at *4–5. We overrule the Barrons' second issue.[12]

### Attorney's Fees

In their third issue, the Barrons argue that the final judgment erroneously awards Pfirman attorney's fees because attorney's fees are not recoverable in a declaratory-judgment action when the claim should have been tried as a trespass-to-

---

[11] The Barrons did not raise this issue until a plea to the jurisdiction, which was filed several months after the trial court granted Pfirman's motion for summary judgment. An argument raised post-judgment is insufficient to preserve the issue for our review. *See Unifund CCR Partners v. Weaver*, 262 S.W.3d 796, 797 (Tex. 2008) (argument first raised by non-movant in post-judgment filing did not preserve issue for appeal); *Petroleum Analyzer Co. v. Olstowski*, No. 01-09-00076-CV, 2010 WL 2789016, at *14–15 (Tex. App.—Houston [1st Dist.] July 15, 2010, no pet.) (mem. op.) (non-movant did not preserve error on issue where "[t]he first time the record shows that [it] raised th[e] issue is in [its] motion for reconsideration, filed after the trial court granted the summary judgment").

[12] The Barrons do not challenge any other aspect of the trial court's summary-judgment ruling.

try-title action. And even if attorney's fees were recoverable in this declaratory judgment action, the Barrons contend that an award of attorney's fees is not supported by the pleadings because Pfirman did not plead for attorney's fees under the Uniform Declaratory Judgment Act (UDJA).

As to their first argument, we have already determined that the Barrons failed to object that this action should not have been brought under the UDJA, but instead as a trespass-to-try-title action. Accordingly, they have likewise waived their claim that Pfirman was not entitled to recover attorney's fees under the UDJA. *See Mid Pac Portfolio, LLC*, 2016 WL 828150, at \*3.[13]

As to their second argument that the pleadings do not support an attorney's fees award, we disagree. Generally, a party may not recover attorney's fees unless authorized by statute or contract. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 119 (Tex. 2009). The UDJA authorizes a trial court to award "reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE § 37.009. Absent exceptions not applicable here, the party requesting attorney's fees must affirmatively plead for them to be eligible for a judgment containing a fee award. *See* TEX. R. CIV. P. 301; *Wells Fargo Bank, N.A. v. Murphy*, 458 S.W.3d 912, 915 (Tex. 2015).

---

[13] *See also Vernon v. Perrien*, 390 S.W.3d 47, 62 (Tex. App.—El Paso 2012, pet. denied); *Krabbe*, 46 S.W.3d at 320–21.

14

Here, the Barrons are correct that Pfirman pleaded that he was entitled to attorney's fees under section 134.005(b) of the Civil Practice and Remedies Code, the Texas Theft Liability Act, and did not explicitly reference the UDJA. But his petition clearly sought declaratory relief that the deeds were void, citing to section 37.004(a) of the Civil Practice and Remedies Code. And he included a more general request for attorney's fees in his prayer for relief. This is sufficient to invoke the potential for attorney's fees under the UDJA and satisfies Rule 301's requirement that attorney's fees be affirmatively pled. *See Wells Fargo Bank, N.A.*, 458 S.W.3d at 915–16 (holding that bank's petition that included request for attorney's fees under the UDJA and more general request for attorney's fees in its prayer for relief satisfied Rule 301).[14]

We therefore overrule the portion of the Barrons' third issue with respect to attorney's fees.

---

[14] *See also HMT Tank Serv. LLC v. Am. Tank & Vessel, Inc.*, 565 S.W.3d 799, 813 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("Although ATV specifically sought attorney's fees under rule 91a, it also included a more general request for attorney's fees in its pleadings, which is sufficient to invoke the potential for attorney's fees under the UDJA.").

15

**Conclusion**

Accordingly, for all of the reasons above, we reverse the portion of the trial court's judgment awarding Pfirman $76,000 in actual damages and $38,760 in prejudgment interest and we render judgment that Pfirman take nothing on his claims for tortious interference, civil conspiracy, and unjust enrichment against the Barrons. We affirm the remainder of the trial court's judgment.

Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Morgan and Dokupil.