

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-20-00051-CV

**MEDFINMANAGER, LLC**,
Appellant

v.

John **SALAS**,
Appellee

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2019-CI-22706
Honorable Karen H. Pozza, Judge Presiding

Opinion by:     Rebeca C. Martinez, Chief Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Luz Elena D. Chapa, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: August 25, 2021

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

John Salas was injured in a vehicle collision while on the job, and he sued the employer of

the other driver. While Salas's case was pending, MedFinManager, LLC ("MedFin") paid medical

providers who performed spinal fusion surgery on Salas. After Salas settled with the other driver's

employer, MedFin sought to collect for its medical payments from the settlement proceeds. It sued

Salas for breach of contract, quantum meruit, and promissory estoppel. Following the first part of

a bifurcated bench trial, the trial court dismissed MedFin's breach of contract claim. The trial

court then dismissed MedFin's quantum meruit claim during a pretrial conference before the start

of the second part of trial. After the completion of the second part of trial, the trial court ordered that MedFin recover $69,393.10 on its promissory estoppel claim and denied all other relief.

MedFin argues that it proved its right to collect $210,365.40, pursuant to its claims for breach of contract and quantum meruit. MedFin also asserts a right to recover attorney's fees as the prevailing party on its promissory estoppel claim. In a cross-issue, Salas argues the trial court erred by denying him recovery of litigation costs. We affirm the trial court's judgment as to MedFin's breach of contract and quantum meruit claims and as to litigation costs. We reverse and remand for a determination of MedFin's attorney's fees related to its promissory estoppel claim.

## BACKGROUND

In 2013, John Salas was injured while driving a company truck, and he sued the employer of the other driver. MedFin coordinated with Salas's then-attorneys and with medical providers to secure Salas's spinal fusion surgery to alleviate his back pain. In February 2014, in connection with his surgery, Salas signed four documents, each entitled "Contract for Payment/Medical Lien," which are discussed below. In August 2014, Salas dismissed his attorneys and hired new counsel. Meanwhile, Salas's lawsuit against the employer of the other driver progressed, and, in December 2015, Salas successfully arbitrated his claims and was awarded a confidential settlement amount.

In February 2016, Salas filed counterclaims against his former attorneys and a third-party petition against MedFin. He challenged whether his former attorneys and MedFin had any valid right to recover from the settlement funds. MedFin filed a general denial and counterclaims against Salas for breach of contract, quantum meruit, promissory estoppel, and several other claims no longer at issue. The trial court ordered that the settlement proceeds be deposited into the court registry until resolution of the claims. In October 2017, the trial court severed Salas's claims against his former attorneys, and later these parties settled.

In 2019, Salas and MedFin agreed to a bifurcated bench trial of their claims. Part one concerned MedFin's breach of contract claim. After part one, the trial court ordered MedFin's breach of contract claim dismissed. During a pretrial conference before part two of trial, the trial court dismissed MedFin's quantum meruit claim. After the parties tried the promissory estoppel claim, they submitted their requests for attorney's fees and costs for a determination based on affidavits they filed with the trial court. Thereafter, the trial court signed a final judgment, which awarded MedFin $69,393.10 on its promissory estoppel claim, ordered the parties to bear their costs, and denied all other requests for relief. The trial court then entered findings of fact and conclusions of law.

On appeal, MedFin argues it established its entitlement to recover $210,365.40 on its breach of contract claim and, alternatively, its quantum meruit claim. It also asserts a right to recover attorney's fees as the prevailing party on its promissory estoppel claim. Salas argues, in his cross-appeal, that the trial court erred by denying him an award of litigation costs. We first review the trial court's judgment as to MedFin's breach of contract claim and then as to its quantum meruit claim. After that, we review the trial court's denial of MedFin's attorney's fees, and, last, we review the trial court's denial of Salas's litigation costs. We reach only the issues necessary to resolve this appeal. *See* TEX. R. APP. P. 47.1.

## BREACH OF CONTRACT

A. Issue Addressed

MedFin describes itself as a "factoring" company. "Factoring is a process by which a business sells to another business, at a discount, its right to collect money before the money is paid." *Primoris Energy Servs. Corp. v. Myers*, 569 S.W.3d 745, 763 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (citation and ellipsis omitted). MedFin purports to factor medical accounts receivable in the context of personal-injury litigation. Salas disputes whether the contracts

MedFin sued upon are enforceable and achieved factoring. He also challenges MedFin's contracts as illegal under section 406.035 of the Texas Labor Code because the contracts prohibit him from submitting medical bills arising out of those contracts to any workers' compensation policy. *See* TEX. LAB. CODE ANN. § 406.035 ("Except as provided by this subtitle, an agreement by an employee to waive the employee's right to [workers'] compensation is void."). Additionally, Salas challenges the contracts as unconscionable because the contracts "necessarily require[] fraud, perjury, and subornation of perjury."

The trial court did not clearly specify which of Salas's theories it adopted to support its judgment denying MedFin relief on its contract claim. In the only finding of fact relevant to breach of contract, the trial court found: "MedFin Management [sic], LLC did not prove by a preponderance of the evidence that John Salas failed to comply with the Contracts for Payment/Medical Lien." In the only relevant conclusion of law, the trial court determined: "The Contracts for Payment/Medical Lien is [sic] unenforceable." Due to the abbreviated nature of the trial court's findings and conclusions, we cannot pinpoint the exact basis for the trial court's judgment. *See Crapps v. Crapps*, 546 S.W.2d 909, 911 (Tex. App.—Austin 1977, no writ) ("The reviewing court must look to the district court's findings of fact and conclusions of law and to the judgment to determine the basis for the entry of the judgment."). Moreover, it is not clear how the trial court's finding as to MedFin's failure to prove Salas's noncompliance with the contracts relates to its conclusion that the contracts are unenforceable. *Cf. Brown v. Frontier Theatres, Inc.*, 369 S.W.2d 299, 301 (Tex. 1963) ("The findings of fact and the conclusions of law will be construed together; and if the findings of fact are susceptible of different constructions, they will be construed, if possible, to be in harmony with the judgment and to support it."). The parties each argue on appeal all of Salas's theories for why the contracts could be unenforceable, and MedFin does not argue that the trial court found against Salas on any of his theories. Consequently, the

trial court's findings and conclusions do not serve their limiting function. *See Guillory v. Dietrich*, 598 S.W.3d 284, 290 (Tex. App.—Dallas 2020, pet. denied) ("The purpose of requesting findings of fact and conclusions of law is to narrow the judgment's bases and thereby reduce the number of contentions the appellant must make on appeal.").

Under these circumstances, we cannot say the trial court deliberately omitted a finding on any essential element of MedFin's contract claim or Salas's contract defenses, and we must presume the trial court made implied findings on all of the essential elements of the claim and defenses. *See* TEX. R. CIV. P. 299; *Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 252 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (explaining that, when a trial court makes findings of fact but inadvertently omits an essential element of a ground of recovery or defense, the presumption of the validity of judgments will supply the omitted element by implication, unless the record demonstrates the trial judge deliberately omitted the element). We, therefore, consider Salas's breach of contract defense that no enforceable contract existed because there was no "meeting of the minds."

"When the 'meeting of the minds' element is contested, it is a question for the fact finder." *Pollard v. Fine*, No. 04-08-00745-CV, 2009 WL 2882941, at *3 (Tex. App.—San Antonio Sept. 9, 2009, no pet.) (mem. op.); *accord Angelou v. African Overseas Union*, 33 S.W.3d 269, 278 (Tex. App.—Houston [14th Dist.] 2000, no pet.). MedFin challenges the sufficiency of the evidence to support the trial court's implied finding that there was no meeting of the minds. We overrule MedFin's challenge, and consequently affirm the trial court's conclusion of law that the contracts sued upon are not enforceable. Because this issue is dispositive as to the breach of contract claim, we do not reach the parties' other issues related to this claim. *See* TEX. R. APP. P. 47.1.

B.  Standard of Review

To determine MedFin's sufficiency challenge, we review the trial evidence in the light most favorable to the trial court's finding and indulge every reasonable inference that would support it.  *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Lloyd Walterscheid & Walterscheid Farms, LLC v. Walterscheid*, 557 S.W.3d 245, 257 (Tex. App.—Fort Worth 2018, no pet.).  A party attacking the legal sufficiency of an adverse finding on an issue on which it bore the burden of proof, must demonstrate that the evidence establishes, as a matter of law, all vital facts in support of the issue.  *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam); *see also McAllen Hosps., L.P. v. Lopez*, 576 S.W.3d 389, 392 (Tex. 2019) (specifying the burden of proving the existence of a valid contract lies on the party alleging breach of contract). In reviewing MedFin's factual sufficiency challenge, we consider and weigh all the evidence in a neutral light and may set aside the finding only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem.*, 46 S.W.3d at 242.

C.  Applicable Law

"Under Texas law, the elements needed to form a valid and binding contract are (1) an offer; (2) acceptance in strict compliance with the offer's terms; (3) a meeting of the minds; (4) consent by both parties; (5) execution and delivery; and (6) consideration."  *Specialty Select Care Ctr. of San Antonio, L.L.C. v. Owen*, 499 S.W.3d 37, 43 (Tex. App.—San Antonio 2016, no pet.) (citation and brackets omitted).  "'Meeting of the minds' describes the mutual understanding and assent to the agreement regarding the subject matter and the essential terms of the contract." *Pollard*, 2009 WL 2882941, at *3 (citing *Weynand v. Weynand*, 990 S.W.2d 843, 846 (Tex. App.—Dallas 1999, pet. denied)).  "Although often treated as a distinct element, meeting of the minds is a component of both offer and acceptance measured by 'what the parties said and did and not on

their subjective state of mind.'" *Karns v. Jalapeno Tree Holdings, L.L.C.*, 459 S.W.3d 683, 692 (Tex. App.—El Paso 2015, pet. denied) (citation omitted); *see also Komet v. Graves*, 40 S.W.3d 596, 601 (Tex. App.—San Antonio 2001, no pet.). "The parties must agree to the same thing, in the same sense, at the same time." *Pollard*, 2009 WL 2882941, at *3 (quoting *Weynand*, 990 S.W.2d at 846).

D. Discussion

MedFin alleges in its breach of contract counterclaim that the claim concerns "non-payment of amounts owed to MedFin under contracts signed by John Salas and his legal representative." According to MedFin, Salas signed these contracts with his medical providers, and MedFin purchased and was assigned the contracts. Salas argues there was no meeting of the minds because his medical providers were not parties to the contracts sued upon. *Cf. Mission Grove, L.P. v. Hall*, 503 S.W.3d 546, 552 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("It is 'axiomatic . . . that a contract between other parties cannot create an obligation or duty on a non-contracting party, which non-contracting party was a stranger to the basic, underlying construction contract.'" (quoting *City of Beaumont v. Excavators & Constructors, Inc.*, 870 S.W.2d 123, 129 (Tex. App.—Beaumont 1993, writ denied))).

We agree with Salas that the trial court reasonably could have determined there was no meeting of the minds between Salas and his medical providers. MedFin purported to contract on behalf of the medical providers, and the trial court, as the factfinder, reasonably could have weighed the evidence to determine that MedFin had no authority to do so and, consequently, did not.

The four contracts sued upon were each entitled "Contract for Payment/Medical Lien" and were signed only by Salas and his attorney. Each contract is addressed to one of Salas's four medical providers: "TO: Dennis R. Gutzman;" "TO: Lawrence L. Lenderman;" "TO: . . . Star

Anesthesia PA;" and "TO: . . . Foundation Surgical Hospital of San Antonio." Each contract provides:

> I hereby authorize and direct my attorney to i) withhold . . . sums from any settlement, judgment or verdict, . . . ii) pay directly and fully to said Provider such sums as may be due and owing the Provider for medical and professional services rendered to me by reason of the accident, [and] iii) to cooperate with Provider in taking whatever steps are necessary to collect monies due under this contract/lien .
> . . .
>
> . . .
>
> I fully understand that I am DIRECTLY, PERSONALLY, and FULLY responsible to make payment in full to said Provider for all professional bills submitted by it for services rendered to me and that the above stated is made solely for said Provider's additional protection and in consideration of its waiting payment.

Salas's signature follows, and, below his signature, is a section entitled "Attorney's Consent to Contract for Payment/Medical Lien." A sentence in this section states: "Undersigned attorney[1] verifies that the above referenced patient has made the personal and irrevocable obligation to make payment in full for the medical care being rendered by Provider." Each of the pages of the contract contains a footer which states: "Medical care will not be provided without signatures on both pages of this document."[2]

Deposition transcripts were admitted at trial. A representative for MedFin testified that MedFin drafted the Contracts for Payment/Medical Liens. One of Salas's medical providers stated that he had never seen the contract addressed to him and was not a party to it; another stated that

---

[1] One of Salas's former attorneys signed these contracts.

[2] MedFin argues that the Contracts for Payment/Medical Liens are unilateral contracts that became enforceable when the medical providers performed Salas's surgery. A unilateral contract is "created by the promisor promising a benefit if the promisee performs. The contract becomes enforceable when the promisee performs." *Vanegas v. Am. Energy Services*, 302 S.W.3d 299, 302 (Tex. 2009) (citation omitted). Here, however, Salas did not condition his promises on the medical provider's performance. Instead, he authorized the repayment of medical bills from settlement funds for the medical provider's "additional protection," and he made other promises related to repayment "for the medical care being rendered." The Contracts for Payment/Medical Liens are unenforceable bilateral contracts with mutual promises between Salas and his medical providers. *See id.*

he did not recognize the contract addressed to him and did not remember making the agreement with Salas. There was no deposition testimony from a representative of the two other providers.

Also in the record were contracts for three of the providers governing their relationship with MedFin. These contracts, entitled "Medical Lien Purchase and Servicing Agreement," specify terms governing MedFin's purchase of each provider's accounts receivable. The contracts specify: "[The medical provider] will bill in accordance with [the provider's] standard billing schedule . . . ." MedFin would accept accounts through a "Purchase Acceptance Notice" and pay the provider fifty or fifty-five percent of the provider's billed amount, depending on the provider. The contract imposes an obligation on the medical provider, "within a reasonable time period after [the provider's] receipt of an Acceptance Notice," to provide MedFin with (i) the patient's billing statement, (ii) supporting medical documentation, (iii) an executed "Notice of Sale and Assignment" of the account, (iv) "any and all further documentation that may be required to evidence, perfect, or otherwise cause the lien to be a validly existing obligation assigned to [MedFin]," and (v) "if applicable, a consensual lien letter executed by the patient and the patient's attorney." Elsewhere, the contract defines "Medical Liens" as "all liens and the resulting accounts receivable . . . for which there is a lien letter executed by both the patient and his/her legal counsel . . . directing the patient for whom [the medical provider] has provided medical services to pay [the provider] for those services from proceeds of insurance, judgment, litigation, or compromise." The contracts also contain a provision granting MedFin limited powers as attorney-in-fact for the provider:

> [The medical provider] hereby appoints [MedFin] as its attorney-in-fact to exercise at any time, at [MedFin's] cost and expense, any or all of the following Powers: (i) to receive, take and endorse [the provider's] name on all checks and other evidences of payment made payable to [MedFin] on accounts assigned to [MedFin]; (ii) to deal with all mail addressed to [the provider] relating to the accounts or Liens; (iii) to notify patients and their attorneys of the assignment of the accounts and the associated Liens to [MedFin] and to request information thereon; and (iv) to make

collection efforts in [the provider's] name that [MedFin] deems necessary or desirable.

On this record, we cannot say that the great weight and preponderance of the evidence or the evidence as a matter of law compels the conclusion that MedFin's powers as attorney-in-fact included a power to create lien letters or otherwise contract on behalf of the medical providers for additional security related to the payment of medical bills. The contracts between MedFin and the medical providers indicate that the providers were responsible for creating lien letters and for providing such letters to MedFin after it purchased an account. Two providers testified at their depositions that they did not recognize the Contracts for Payment/Medical Liens; there is no deposition testimony related to the other two providers. To the extent there is any ambiguity about MedFin's authority to contract for additional security for repayment of medical bills on behalf of the providers, the trial court reasonably could have resolved the matter in favor of Salas because it is not established as a matter of law and is not against the great weight and preponderance of the evidence. *See City of Keller*, 168 S.W.3d at 821; *Dow Chem.*, 46 S.W.3d at 242. In consequence, the trial court did not err by finding there was no meeting of the minds between the medical providers and Salas related to the Contracts for Payment/Medical Liens because the providers were not parties to these contracts; therefore, the contracts are unenforceable by MedFin, as a purported assignee of the contracts.

Looking beyond the written Contracts for Payment/Medical Liens, MedFin argues that it also sued for breach of oral contracts between the medical providers and Salas that are evidenced through medical bills. According to MedFin, even if the Contracts for Payment/Medical Liens are unenforceable, it may collect on unsecured, accounts receivable. However, MedFin's assertion that it sued upon oral contracts is belied by its pleading, which states that its breach of contract claim is a "dispute over the non-payment of amounts owed to MedFin under contracts *signed by*

*John Salas and his legal representative*" (emphasis added). Likewise, MedFin's motion for summary judgment addresses the claim only with respect to the Contracts for Payment/Medical Liens. MedFin argued in its motion that "MedFin intended to make an offer" and that Salas breached the contracts by submitting bills to a workers' compensation plan, by refusing to release settlement funds to pay the medical liens, and by disputing medical bills. All three of these alleged breaches correspond to specific provisions in the Contracts for Payment/Medical Liens. The trial court's findings and conclusions referred specifically to the Contracts for Payment/Medical Liens and did not address any other purported contracts, oral or otherwise. *See Valencia v. Garza*, 765 S.W.2d 893, 897–98 (Tex. App.—San Antonio 1989, no writ) ("The principal usefulness of conclusions of law is to denote to the appellate court the theory on which the action was tried).

"Parties are restricted on appeal to the theory on which the case was tried." *Wells Fargo Bank, N.A. v. Murphy*, 458 S.W.3d 912, 916 (Tex. 2015) (quoting *Davis v. Campbell*, 572 S.W.2d 660, 662 (Tex. 1978)); *see also* TEX. R. APP. P. 33.1. MedFin cannot argue on appeal a theory for its breach of contract claim based upon purported oral contracts that does not comport with the theory for breach of written contracts argued in the trial court. *See Simmons & Simmons Construction Co. v. Rea*, 155 Tex. 353, 356, 286 S.W.2d 415, 417 (1955) (holding plaintiff that could have gone to the jury on oral and written contract theories but that accepted without complaint submission of the issue only on a written contract theory had implicitly agreed that the case would be decided on that theory).

We affirm the trial court's judgment denying MedFin recovery on its breach of contract claim.

## QUANTUM MERUIT

MedFin asserts that the trial court dismissed its quantum meruit claim during a pretrial hearing before the second part of the bifurcated bench trial because it determined there would be

legally insufficient evidence for the claim. On appeal, MedFin argues there is more than a scintilla of evidence on each element of the claim.

"Quantum meruit is an equitable remedy that is based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted." *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732 (Tex. 2018) (citation omitted). "Generally, a party may recover under quantum meruit only when no express contract covering the services or materials furnished exists." *Residential Dynamics, LLC v. Loveless*, 186 S.W.3d 192, 198 (Tex. App.—Fort Worth 2006, no pet.). To recover under quantum meruit, a claimant must prove that: (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) those services and materials were accepted by the person sought to be charged and were used and enjoyed by the person; and (4) the person sought to be charged was reasonably notified that the person performing such services or furnishing such materials was expecting to be paid by the person sought to be charged. *Hill*, 544 S.W.3d at 732–33.

We do not reach the merits of MedFin's arguments on appeal as to its quantum meruit claim because we hold that MedFin waived its arguments by failing to raise them in the trial court. *See* TEX. R. APP. P. 33.1. As with its breach of contract claim, MedFin attempts to pursue a new theory of recovery on appeal. At trial, MedFin sought recovery for the payments for surgery made on Salas's behalf. MedFin argued in its summary judgment briefing that the valuable services rendered, upon which the quantum meruit claim was based, consisted of the medical care Salas received through his surgery. MedFin argued that it "step[ped] into the shoes of the medical providers who performed Salas [sic] surgery." Now, on appeal, MedFin argues that the valuable services rendered were ancillary services MedFin performed to arrange medical care, including assessing Salas's personal-injury case and drafting the Contracts for Payment/Medical Liens. Because, MedFin is restricted to the theory that Salas's medical care, and not ancillary services,

comprise the valuable services rendered, we do not consider MedFin's arguments based on its new theory for services rendered. *See Murphy*, 458 S.W.3d at 916; *see also* TEX. R. APP. P. 33.1. We affirm the trial court's judgment denying MedFin recovery on its quantum meruit claim.

## ATTORNEY'S FEES

MedFin asserts the trial court erred by denying it attorney's fees after it prevailed on its promissory estoppel claim. In a conclusion of law, the trial court determined that an award of attorney's fees would not be "equitable or just." MedFin argues that the trial court erroneously applied an equitable standard when fees were mandatory.

Salas does not dispute MedFin's entitlement to fees on its promissory estoppel claim generally, but instead argues the denial of fees was proper because MedFin failed to supplement its discovery responses. However, Salas argues from a false premise. We disagree with Salas that the trial court withheld fees from MedFin as discovery sanctions because the record is clear that the trial court did not impose sanctions.

Rule 193.6 of the Texas Rules of Civil Procedure generally prohibits a party from introducing evidence that it failed to disclose in a timely manner. *See* TEX. R. CIV. P. 193.6. Rule 215.2 permits a range of sanctions for a party's failure to comply with a discovery request. *See id.* R. 215.2. Salas filed a motion to exclude MedFin's experts on attorney's fees under these Rules; however, the trial court orally denied Salas's motion at a preliminary hearing. Later, the trial court granted a motion in limine related to contested evidence on attorney's fees, but the trial court ultimately held a bench trial, which made the ruling on the motion in limine irrelevant. *See Allison v. Comm'n for Lawyer Discipline*, 374 S.W.3d 520, 526 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("Absent a jury, a motion in limine is irrelevant."). By agreement, the parties tried the issue of attorney's fees by affidavit following the trial of MedFin's promissory estoppel claim. The trial court denied all attorney's fees in its judgment but did not specify that denial was in any

way related to Salas's requested sanctions, which the trial court previously refused. From this record it is apparent the trial court did not exclude evidence of MedFin's attorney's fees as a discovery sanction.

We agree with MedFin that the trial court erred by applying an equitable standard when it denied MedFin fees, rather than award fees to MedFin as the prevailing party on its promissory estoppel claim. Promissory estoppel permits enforcement of an otherwise unenforceable promise that a party has relied upon to its detriment. *Vogel v. Travelers Indem. Co.*, 966 S.W.2d 748, 754 (Tex. App.—San Antonio 1998, no pet.). Section 38.001 of the Texas Civil Practice and Remedies Code provides for recovery of attorney's fees when the claim is for "an oral or written contract." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8); *cf. id.* § 37.009 (allowing an award of attorney's fees under the Declaratory Judgments Act if such award would be "equitable and just"). "[T]he weight of authority in Texas is that attorney's fees are recoverable under Section 38.001(8) of the Texas Civil Practices & Remedies Code in a promissory estoppel claim." *Turner v. NJN Cotton Co.*, 485 S.W.3d 513, 528 (Tex. App.—Eastland 2015, pet. denied). Previously, we upheld an award of attorney's fees under Section 38.001(8) for the prevailing party on a promissory estoppel claim, and Salas has not presented any argument or authority to justify reversing or distinguishing our precedent. *See Traco, Inc. v. Arrow Glass Co.*, 814 S.W.2d 186, 193–94 (Tex. App.—San Antonio 1991, writ denied). Consequently, we hold the trial court erred by denying fees to MedFin under Section 38.001(8) as the prevailing party on its promissory estoppel claim. *See Brent v. Field*, 275 S.W.3d 611, 622 (Tex. App.—Amarillo 2008, no pet.) ("Under section 38.001, an award of reasonable attorney's fees is mandatory if there is proof of the reasonableness of the fees.").

As to our disposition, MedFin asks that we render a fee award in its favor. We remand, however, because Salas disputed the reasonableness of MedFin's fees before the trial court, and

the matter of MedFin's reasonable fees remains unresolved. *See id.*; *DaimlerChrysler Motors Co., LLC v. Manuel*, 362 S.W.3d 160, 198 (Tex. App.—Fort Worth 2012, no pet.) (remanding for a determination of reasonable and necessary attorney's fees after a trial court improperly denied fees under Section 38.001).

## LITIGATION COSTS

Last, Salas argues in his cross-issue that the trial court erred by denying him costs pursuant to Chapter 42 of the Texas Civil Practice and Remedies Code and Rule 167 of the Texas Rules of Civil Procedure.

Chapter 42 and Rule 167 provide a method by which a party can recover certain litigation costs for certain claims if (1) the party makes an offer to settle a claim, (2) the offeree rejects the offer, and (3) "the judgment to be awarded [on the claim] is significantly less favorable to the offeree than was the offer." TEX. R. CIV. P. 167.4(a); *see also* TEX. CIV. PRAC. & REM. CODE ANN. §§ 42.002–.005; TEX. R. CIV. P. 167.1–167.7; *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 513 (Tex. 2014). The Legislature created this offer-of-settlement mechanism through Chapter 42, and the Texas Supreme Court promulgated Rule 167 to provide the procedural details for its implementation. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 42.005; *Note Inv. Group, Inc. v. Assocs. First Capital Corp.*, 476 S.W.3d 463, 475 (Tex. App.—Beaumont 2015, no pet.).

Under Rule 167, the cost-shifting mechanism "applies only to 'an offer made substantially in accordance with this rule.'" *Amedisys*, 437 S.W.3d at 513 (quoting TEX. R. CIV. P. 167.1). "A settlement offer not made in compliance with this rule . . . cannot be the basis for awarding litigation costs under this rule as to any party." TEX. R. CIV. P. 167.7.

MedFin argues that Salas did not make an offer substantially in accordance with Chapter 42 and Rule 167 because he did not file a declaration prior to making a settlement offer. Salas

argues that he timely filed and served a declaration through an amended answer with counterclaims. He filed his pleading on February 22, 2019, and it includes a declaration pursuant to Chapter 42 and Rule 167. *See Orix Capital Mkts., LLC v. La Villita Motor Inns, J.V.*, 329 S.W.3d 30, 50 (Tex. App.—San Antonio 2010, pet. denied) (remarking that a party invoked the cost-shifting procedures available under Chapter 42 and Rule 167 when it filed an amended petition and answer). However, Salas made his settlement offers prior to filing his declaration. He sent his first offer on December 28, 2018, and his second offer on January 16, 2019.

We determine that Salas did not make an offer substantially in accordance with Chapter 42 and Rule 167 because he did not file a declaration *prior* to making his settlement offers. Rule 167.2(a) provides:

> *Defendant's declaration a prerequisite; deadline.* A settlement offer under this rule may not be made until a defendant—a party against whom a claim for monetary damages is made—files a declaration invoking this rule. When a defendant files such a declaration, an offer or offers may be made under this rule to settle only those claims by and against that defendant. The declaration must be filed no later than 45 days before the case is set for conventional trial on the merits.

TEX. R. CIV. P. 167.2. Section 42.002(c) of the Texas Civil Practice and Remedies Code provides: "This chapter does not apply until a defendant files a declaration that the settlement procedure allowed by this chapter is available in the action." TEX. CIV. PRAC. & REM. CODE ANN. § 42.002(c). We apply the same rules of construction to a rule of civil procedure as to statutes. *See In re Christus Spohn Hosp. Kleberg*, 222 S.W.3d 434, 437 (Tex. 2007). "When a rule of procedure is clear and unambiguous, we construe the rule's language according to its plain or literal meaning." *Id.* Rule 167.2(a) is clear; its plain language stipulates that an offer "may not be made" until after a declaration is filed. The phrase "may not" "imposes a prohibition and is

synonymous with 'shall not.'" TEX. GOV'T CODE ANN. § 311.016(5).[3] The subsection's heading, "*Defendant's declaration a prerequisite*," gives some indication that the supreme court intended a declaration as a prerequisite to a settlement offer under the Rule. *See In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 307 (Tex. 2010) (explaining that, while a heading cannot expand a statute's meaning, it "gives some indication of the Legislature's intent" (citing TEX. GOV'T CODE ANN. § 311.024)). Moreover Rule 167.2(a) comports with Section 42.002(c), which specifies that Chapter 42 "does not apply until a defendant files a declaration." TEX. CIV. PRAC. & REM. CODE ANN. § 42.002(c).

Salas did not make his settlement offers substantially in accordance with Chapter 42 and Rule 167 because he made his offers prior to filing his declaration invoking the cost-shifting mechanism. *See id.*; TEX. R. CIV. P. 167.2(a); *cf. Logsdon v. Logsdon*, No. 02-14-00045-CV, 2015 WL 7690034, at *13 (Tex. App.—Fort Worth Nov. 25, 2015, no pet.) (determining a settlement offer did not comply with Rule 167 and Chapter 42 because there was no declaration invoking Rule 167 in the record); *Orix Capital Mkts.*, 329 S.W.3d at 50 (determining party did not comply with Rule 167 because it first invoked the Rule only thirty-two days before trial began). Consequently, the trial court did not err by denying Salas litigation costs pursuant to Chapter 42 and Rule 167. We overrule Salas's cross-issue.

## CONCLUSION

We affirm the trial court's judgment in all respects, except as to the denial of an award of attorney's fees to MedFin. We remand the cause to the trial court for a determination of MedFin's

---

[3] The Code Construction Act, which comprises Chapter 311 of the Government Code, applies to the Texas Rules of Civil Procedure. *See* TEX. GOV'T CODE ANN. §§ 311.001–.035; *In re Walkup*, 122 S.W.3d 215, 217 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

reasonable attorney's fees under Section 38.001(8) in connection with its promissory estoppel claim.

Rebeca C. Martinez, Chief Justice